**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LBS INNOVATIONS, LLC, <br><br>        Plaintiff, <br><br>   v. <br><br> APPLE INC., <br><br>        Defendant. | Case No.      2:19-cv-00119-JRG <br><br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S MOTION TO CHANGE VENUE
TO THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ..................................................................................................... 2

III.   LEGAL STANDARD.............................................................................................. 4

IV.    ARGUMENT ........................................................................................................... 4

       A.    This Case Could Have Been Brought in the Northern District of California. .............. 4

       B.    The Private Factors Favor Transfer. ............................................................... 5

             1)    Most Relevant Sources of Proof Are in Or Near the Northern District of
                   California. ......................................................................................... 5

                   a)    Apple's Evidence Is in the Northern District of California. ................... 5

                   b)    The Location of LBSI's Documents Does Not "Balance" the
                         Evidence Apple Has Presented. .............................................. 6

             2)    The Convenience of Party Witnesses Favors Transfer. ....................... 8

             3)    The Availability of Compulsory Process Favors Neither District. ................... 11

             4)    Other Practical Problems Associated with Trial of This Case Are
                   Neutral................................................................................................ 12

       C.    The Public Interest Factors Favor Transfer to the Northern District.......................... 13

             1)    California Has a Strong Local Interest in the Accused Products....................... 13

             2)    A Small Difference in Time-To-Trial Does Not Outweigh the Factors in
                   Favor of Transfer. ............................................................................ 14

             3)    The Remaining Public-Interest Factors Are Neutral. ....................... 15

V.     CONCLUSION...................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Acoustic Tech., Inc. v. Silver Spring Networks, Inc.*,
   2017 WL 1133338 (E.D. Tex. Mar. 27, 2017) ........................................................ 5, 7, 11, 15

*ACQIS LLC v. EMC Corp.*,
   67 F. Supp.3d 769 (E.D. Tex. 2014) ........................................................................ 13

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp.2d 867 (E.D. Tex. 2013) ...................................................................... 11

*Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*,
   2012 WL 12839376 (E.D. Tex. Mar. 27, 2012) ...................................................... 10

*Blue Spike, LLC v. Juniper Networks, Inc.*,
   2018 WL 4222994 (E.D. Tex. Mar. 8, 2018) ...................................................... 11, 15

*Bush Seismic Techs. LLC v. American Gem Soc'y*,
   2016 WL 1545855 (E.D. Tex. Apr. 15, 2016) ......................................................... 5, 6

*Deep Green Wireless LLC v. Ooma, Inc.*,
   2017 WL 679643 (E.D. Tex. Feb. 21, 2017) ............................................................ 15

*Gonzalez v. Tagged, Inc.*,
   2015 WL 5578367 (E.D. Tex. Sep. 22, 2015) ......................................................... 14

*In Re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) ..................................................................... 5, 6, 8, 15

*In Re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ........................................................................... 8, 13

*In re Horseshoe Entm't*,
   337 F.3d 429 (5th Cir. 2003) ..................................................................................... 8

*In re Morgan Stanley*,
   417 F. App'x. 947 (Fed. Cir. 2011) ......................................................................... 13

*In re Toa Techs., Inc.*,
   543 F. App'x. 1006 (Fed. Cir. 2013) ......................................................................... 5

*In re Verizon Bus. Network Servs.*,
   635 F.3d 559 (Fed. Cir. 2011) ................................................................................. 12

*In Re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ......................................................................... 4, 9, 13

*In Re Volkswagen of America, Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................................. 4, 5

*Kranos IP Corp. v. Riddell, Inc.*,
    2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ............................ 10, 11, 15

*Maz Encryption Techs., LLC v. Apricorn, Inc.*,
    2016 WL 7626179 (E.D. Tex. Apr. 21, 2016) ............................... 14, 15

*Personalweb Techs., LLC v. Apple, Inc.*,
    2014 WL 1689046 (E.D. Tex. Feb. 12, 2014) .................................... 6

*Realtime Data, LLC v. Hewlett Packard Enter. Co.*,
    2017 WL 3709095 (E.D. Tex. Feb. 3, 2017) ...................................... 8

*Saint Lawrence Commc'ns LLC v. Apple Inc.*,
    2017 WL 3712153 (E.D. Tex. Feb. 6, 2017) .................................... 14

*Uniloc USA, Inc. v. Cisco Sys., Inc.*,
    2017 WL 959856 (E.D. Tex. Mar. 13, 2017) ................................... 14

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ........................................................................ 10

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    2012 WL 506669 (E.D. Tex. Feb. 15, 2012) .................................. 14

**Statutes**

28 U.S.C. § 1400(b) ...................................................................................... 4

28 U.S.C. § 1404(a) ...................................................................................... 4

**Rules**

Fed. R. Civ. P. 45(c)(1) ............................................................................... 11

Pursuant to 28 U.S.C. § 1404(a), Defendant Apple Inc. ("Apple") respectfully moves the Court for an order transferring venue in this action to the Northern District of California.

## I.     INTRODUCTION

In this case, Apple, a California corporation, is charged with infringing a patent invented and prosecuted in California, by selling products designed and developed in California by engineers residing in California. The plaintiff bringing these claims is based in New York, with no Texas presence at all. This case belongs in the Northern District of California, and Apple respectfully requests that the Court transfer it there.

Defendant Apple is a California corporation, headquartered—as it has been for over 40 years—in the Northern District. The accused products—iPhones, iPads, Apple Watches, and Mac computers—were developed in Apple's Northern District headquarters. The engineers knowledgeable about these products are in the Northern District. And the relevant engineering, sales, and marketing documents are all in the Northern District.

In contrast, this case has essentially no ties to Texas or this District. Plaintiff LBS Innovations, LLC ("LBSI") has no known relationship with Texas beyond its desire to file lawsuits here. LBSI has no office, employees, or other presence in Texas. LBSI's office is, instead, in New York, as are two of LBSI's three co-owners. The third, who is also the patent-in-suit's inventor, developed the patent-in-suit in California and now lives in Eugene, Oregon. As LBSI has no office in Texas, it has no documents or other sources of proof here. And there are no known third-party witnesses of any kind in this District.

In sum, neither Apple nor LBSI has any relevant presence in or near this District. And no known witnesses or sources of proof are located here. The Northern District of California is, thus, a clearly more convenient venue for the parties to litigate this case, and Apple respectfully asks this Court to transfer it there.

1

## II.    BACKGROUND

Apple is the sole defendant in this patent infringement case. Since its founding in 1976, Apple has been a California corporation, headquartered in Cupertino, California. (Declaration of Michael Jaynes ("Jaynes Decl."), ¶ 4.) Apple employs more than 30,000 people in and near its Cupertino headquarters. (*Id.*, ¶ 5.) The engineers who developed the accused feature—Apple Maps' display of location-based search results—work in or near Cupertino. (*Id.*, ¶¶ 8–9.) None of Apple's relevant engineers are located in, or work with employees in, the state of Texas. (*Id.*, ¶ 9.) Apple's technical documents relating to the accused functionalities are located in Apple's Northern District offices, as are its marketing and financial documents. (*Id.*, ¶ 8.)

The complaint, here, accuses Apple of infringing U.S. Patent No. 6,091,956 (the "'956 Patent"). The '956 Patent lists Dennis D. Hollenberg as its sole inventor. Mr. Hollenberg resided in Ventura, California, while he allegedly invented the technology claimed in the '956 Patent and, later, prosecuted the patent *pro se*. (Ex. 1, '956 Patent File History File Jacket; Ex. 2, '956 Patent Cover Page.) Mr. Hollenberg currently lives in Eugene, Oregon. (Ex. 3, Lane County Property Record.)

There is no evidence that Mr. Hollenberg has ever attempted to commercialize or use his invention. Instead, in 2010, he joined forces with two New York patent lawyers, Daniel Mitry and Timothy Salmon. (Ex. 4, NY Attorney Records.) Messrs. Mitry and Salmon are self-proclaimed "patent licensing & monetization experts" and the co-founders and principals of Empire IP, a company that "partners" with inventors to generate patent licensing revenue. (Ex. 5, Empire IP Management Team Webpage.) In 2010, the trio formed LBS Innovations LLC in New Jersey ("LBSI-New Jersey"), to which Mr. Hollenberg quickly assigned the '956 Patent. (Ex. 6, NJ Business Name Search Results; Ex. 7, '956 Patent USPTO Assignment Record.) Within months, LBSI-New Jersey started filing lawsuits. Although neither the company nor its cofounders had any

2

ties to Texas, they chose from the get-go to wage their litigation campaign in the Eastern District of Texas. *See., e.g.,* Compl., Dkt. No. 1, *LBS Innovations LLC v. Aaron Bros., Inc.*, Case No. 2:11-cv-00142 (E.D. Tex. Mar. 04, 2011).

After LBSI-New Jersey had filed a few cases in this District, one of its targets struck back with a declaratory judgement action in the District of New Jersey. Compl., Dkt. No. 1, *Microsoft Corp. v. LBS Innovations LLC*, Case No. 2:12-cv-00848 (D.N.J. Feb. 10, 2012). Within days, LBSI's co-owners incorporated a new company in Texas (i.e., LBSI) and transferred the rights to the '956 Patent from LBSI-New Jersey to the new Texas LBSI. (Ex. 8, Certificate of Formation; Ex. 7.) By doing so, LBSI was able to get the declaratory judgment action consolidated with its infringement case in the Eastern District of Texas, which had been filed first. Since then, Mr. Hollenberg and his attorney partners appear to have abandoned LBSI-New Jersey. Instead, they turned to the Texas LBSI for filing suit in this District. *E.g.*, Dkt. No. 1, ¶ 1.

Despite their litigation-driven maneuvers, LBSI and its co-owners still do not appear to have any real ties to Texas. LBSI has no physical offices in Texas. LBSI did file documents with the Texas Secretary of State listing a "registered office address" in Austin. But that address is in fact the office of Loan Star Information Services, a company whose business is to act as a mail receiver and registered agent for other companies. (Ex. 9, Affidavit of Chris Dathe.) LBSI's actual corporate office, as evidenced by its Secretary of State records, is in New York. (Ex. 10, Texas Secretary of State Record.) In the same record, LBSI's corporate members—Messrs. Mitry, Salmon, and Hollenberg—respectively list home addresses in New York, New Jersey, and Oregon. (*Id.*)

This case is at a very early stage. A scheduling conference was held on July 1, but apart from Plaintiff's initial infringement contentions, no discovery or disclosures have been served.

3

Trial, set for September 2020, is well over a year away.

## III.   LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To justify transfer under § 1404(a), a moving party must first show that the claims "might have been brought" in the proposed transferee district. *In Re Volkswagen of America, Inc.*, 545 F.3d 304, 312–13 (5th Cir. 2008) ("*Volkswagen II*"). The party seeking transfer must then show that the "transferee venue is clearly more convenient" than the district where the case was originally filed. *Id.* at 315.

In applying the transfer standard, courts in this district weigh a series of eight "private" and "public" factors. The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In Re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public factors, in turn, include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

A plaintiff's choice of venue is <u>not</u> a factor in the transfer analysis. *Volkswagen II*, 545 F.3d at 315. Rather, this choice is taken into account through the "clearly more convenient" standard applied by the Court in weighing the transfer request. *Id.*

## IV.   ARGUMENT

### A.   This Case Could Have Been Brought in the Northern District of California.

Under 28 U.S.C. § 1400(b), a patent infringement action may be brought in "the judicial

4

district where the defendant resides . . ..” Apple is headquartered in Cupertino, California, within the Northern District. (Jaynes Decl., ¶ 4.) This case could therefore have been brought in the Northern District.

**B.     The Private Factors Favor Transfer.**

Apple’s witnesses and documents are located in the Northern District. No witnesses and relevant documents are in this District. And given their lack of ties to Texas, transfer would not burden LBSI’s witnesses. No substantive proceedings have yet occurred in this case, and there are no other pending cases involving the same patent. The private factors, here, favor transfer.

**1)     Most Relevant Sources of Proof Are in Or Near the Northern District of California.**

Access to sources of proof strongly favors transfer. “This factor turns upon which party—usually the accused infringer—will most probably have the greater volume of documents relevant to the litigation and the presumed location of these documents . . ..” *Bush Seismic Techs. LLC v. American Gem Soc’y*, No. 2:14-cv-1809-JRG, 2016 WL 1545855, *3 (E.D. Tex. Apr. 15, 2016) (citations omitted). Here, all of Apple’s relevant documents are located in the Northern District, and LBSI’s documents provide no counterweight.

**a)     Apple’s Evidence Is in the Northern District of California.**

When a defendant has most of the relevant documents, “the place where the defendant’s documents are kept weighs in favor of transfer to that location.” *Acoustic Tech., Inc. v. Silver Spring Networks, Inc.*, No. 2:16-cv-00831-JRG-RSP, 2017 WL 1133338, *2 (E.D. Tex. Mar. 27, 2017) (citing *In Re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). The location of documents is a factor in the transfer analysis even if the documents are in electronic form. *Volkswagen II*, 545 F.3d 304 at 316; *In re Toa Techs., Inc.*, 543 F. App’x. 1006, 1008–09 (Fed. Cir. 2013). Here, LBSI appears to accuse Apple Maps’ display of location-based search results on certain iPhones, iPads,

Mac computers, and Apple Watches, and in CarPlay-enabled devices. (Dkt. No. 1, ¶¶ 5–10.) The design, development, and implementation of this feature took place in Cupertino, California, by Apple employees working there. (Jaynes Decl., ¶ 9.) The design and engineering documents relating to the location-based search features of Apple Maps are stored in or near Cupertino. (*Id.*, ¶ 8.) Apple's highly-confidential source code for these features is also maintained in the Northern District. (*Id.*) Likewise, Apple's marketing and sales documents are located in the Northern District. (*Id.*, ¶ 10.)

In contrast, none of Apple's relevant documents are in Texas. (Jaynes Decl., ¶ 13.) Apple's only presence in this District was two retail Apple Stores, which closed the day this lawsuit was filed. (*Id.*, ¶ 14.) And while Apple maintains facilities in Austin and Dallas, no Apple documents or witnesses relevant to this case are there, or anywhere in Texas. (*Id.*, ¶ 15.) The location of Apple's documents in the Northern District thus favors transfer there. *See Personalweb Techs., LLC v. Apple, Inc.*, No. 6:12-cv-660, 2014 WL 1689046, *10–11 (E.D. Tex. Feb. 12, 2014).

> **b)** **The Location of LBSI's Documents Does Not "Balance" the Evidence Apple Has Presented.**

Set against the sources of proof in California, there is no evidence that there are meaningful amounts of relevant documents in Texas. As courts have noted, an accused infringer—not the patentee—"will most probably have the greater volume of documents relevant to the litigation." *Bush Seismic*, 2016 WL 1545855 at *3; *see In Re Genentech*, 566 F.3d at 1345. That holds true here. Apple has identified extensive categories of nonpublic documents created and maintained in the Northern District of California. These include marketing documents, engineering specifications for features and products, and related source code. (Jaynes Decl., ¶¶ 8, 10.)

In contrast, LBSI is unlikely to have many—if any—documents in Texas. First, LBSI has no office in Texas. (Ex. 9) Although LBSI listed an Austin office address on its filings with the

Texas Secretary of State, that address is a mirage. Far from an LBSI office, the address belongs to a company called Loan Star Information Services that makes its living as a service agent and mailbox repository for any company willing to pay a fee. (*Id.*) None of the employees present at this address were LBSI employees. The Austin address is thus, to put it mildly, unlikely to house documents relevant to this case. *See Acoustic Tech.*, 2017 WL 1133338 at *3 (out-of-state plaintiff with no employees or place of business in Texas other than a registered service agent "adds little to counterbalance the locus of [the defendant's] evidence and witnesses"). Consistent with this, LBSI represented in its infringement contentions that it "does not currently have any documents" at all, across multiple broad categories, including documents that evidence disclosures or sales and offers of the claimed invention or that evidence conception and reduction to practice. (Ex. 11, June 17, 2019 Infringement Contentions, p. 4.)

LBSI previously suggested that, to the extent that it has any relevant documents, they were likely to be in the possession of the inventor, Dennis Hollenberg, or at "counsel's offices in Dallas, Texas." *See* Def.'s Mot. to Dismiss or Transfer Venue, Dkt. No. 26-1, p. 23, *Microsoft Corp. v. LBS Innovations, LLC*, Case No. 2:12-cv-00848 (D.N.J. Apr. 13, 2012). Mr. Hollenberg lives in Eugene, Oregon, and so his documents are presumably located there. *Id.* Here, the distance between Eugene and the Northern District of California is approximately one quarter of that between Eugene and this District. (Ex. 12, Distances from Eugene, OR.; *infra* pp. 9–10, LBSI Witness Travel Times to Marshall and N.D. Cal.) Thus, relevant documents in the inventor's possession would be more conveniently produced in the Northern District than in this District.

Whether or not LBSI's litigation counsel have any relevant documents, the location of those documents is irrelevant. The location of counsel themselves is "irrelevant and improper for consideration in determining the question of transfer of venue." *In re Horseshoe Entm't*, 337 F.3d

429, 434 (5th Cir. 2003). In addition, any LBSI documents in its counsel's possession were transferred to them for use in litigation. But "[d]ocuments that have been moved to a particular venue in anticipation of litigation are not considered in this analysis." *Realtime Data, LLC v. Hewlett Packard Enter. Co.*, No. 6:16-cv-00086-RWS-JDL, 2017 WL 3709095, *3 (E.D. Tex. Feb. 3, 2017) (citing *In Re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009). Although LBSI may have moved its documents to Texas in anticipation of previous cases, the underlying principle in *Realtime Data* still applies: But for their use in litigation, LBSI's documents would not be with its lawyers in Texas. Any assertion that such documents are "located in" this District is thus "a fiction which appears to [] have been created to manipulate the propriety of venue." *In Re Hoffman-LaRoche Inc.*, 587 F.3d at 1337. Therefore, LBSI has no sources of evidence that counterbalance Apple's, which are solely in the Northern District of California.

### 2)    The Convenience of Party Witnesses Favors Transfer.

The Northern District of California is more convenient for both parties' witnesses in this case. And "[t]he convenience of the witnesses is probably the single most important factor in [the] transfer analysis." *In Re Genentech*, 566 F.3d at 1343. Here, neither party has a witness who resides within the Eastern District of Texas. To the contrary, Apple's relevant personnel are in the Northern District of California, and transfer there would also bring the case much closer to the most relevant LBSI witness, Mr. Hollenberg.

With respect to Apple's witnesses, individuals with knowledge of the engineering, sales, marketing, and licensing of the accused features are located in the Northern District.[1] For instance:

- **Matt Ball** is a Software Engineer in the Maps Group at Apple. Mr. Ball and his team are knowledgeable about Apple Maps' search functionality. Mr. Ball and nearly all of his team who worked on this functionality are located in the Northern District. Mr. Ball and his team did not work with anyone located in Texas on the design, development,

---

[1] By identifying witnesses, Apple does not concede that its products practice LBSI's claims.

or implementation of the accused functionality. (Jaynes Decl., ¶ 9.)

- **Allen Denison** is a Senior Product Manager who is knowledgeable about the marketing of Apple Maps' search functionality. Mr. Denison is located in the Northern District. (*Id.*, ¶ 10.)

- **Michael Jaynes** is an Apple finance employee knowledgeable about sales of the accused products. Mr. Jaynes is located in the Northern District. (*Id.*, ¶¶ 2, 12.)

- **Apple employees** knowledgeable about the licensing of intellectual property by and to Apple, are located in the Northern District. (*Id.*, ¶ 11.)

In contrast, no relevant Apple employees work in Texas, or even work with anyone in Texas on the accused functionality. (Jaynes Decl., ¶¶ 8–10.)

Apple's witnesses are a 15-minute car ride from the Northern District courthouse in San Jose, and around an hour by car from the courthouses in San Francisco and Oakland. (Ex. 13, pp. 1–3, Apple Witness Travel Times to Marshall & N.D. Cal.) For any of Apple's witnesses to travel to Marshall requires either a 3+ hour flight to Dallas followed by a 2-hour, 30-minute drive to Marshall, or a 5-hour, 30-minute flight to Shreveport followed by a 40-minute drive to Marshall. (*Id.*, pp. 4–11.) This difference is entitled to significant weight: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Such long-distance travel imposes burdens beyond travel time, including "meal and lodging expenses" and "overnight stays [that] increase[] the time which these fact witnesses must be away from their regular employment." *Id.* at 205. Transfer would avoid these burdens.

The Northern District also appears more convenient for one of LBSI's witnesses—the sole listed inventor of the '956 Patent. And, as another court in this District has recognized, "inventors . . . are [] likely to have relevant testimony" in a patent infringement suit. *Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*, No. 6:11-cv-11, 2012 WL 12839376, at \*4 (E.D. Tex. Mar.

27, 2012). The inventor here, Dennis Hollenberg, lives in Eugene, Oregon, and is a part-owner of LBSI. (Ex. 10.) Travel to the Northern District would take Mr. Hollenberg at least four and a half hours less than travel to this Court. (Ex. 14, pp. 1–14, LBSI Witness Travel Times to Marshall and N.D. Cal.) There are no direct flights from Eugene to Dallas or Shreveport. (*Id.,* pp. 8–9, 12–13.) The trip from Eugene to Marshall requires a long connecting flight, and the total travel time is at least 7 hours. (*Id.,* pp. 7–14.) In contrast, nonstop flights between Eugene and San Francisco take a mere one and a half hours. (*Id.*, p. 1.) Then, each of the Northern District courthouses in San Francisco, San Jose, and Oakland are within an hour's drive from San Francisco International Airport. (*Id.*, pp. 4–6)

The two other co-owners of LBSI, Daniel Mitry and Timothy Salmon, would suffer no inconvenience if this case was to be transferred. Mr. Mitry lives in New Jersey, and Mr. Salmon lives in New York. Travel from New York to this Court takes approximately six hours, whether through Dallas or Shreveport. (Ex. 14, pp. 10, 14, 19–24.) This is almost exactly the same as the length of a direct flight between New York and San Francisco. (*Id.*, p. 15.) Thus, the Northern District is at least equally convenient as this Court for Messrs. Mitry and Salmon.

When considering the importance of witness convenience, this Court has recognized that the purpose of allowing transfer under § 1404(a) in the first place is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-cv-443-JRG, 2017 WL 3704762, *9 (E.D. Tex. Aug. 28, 2017) (internal quotations omitted) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). In this case, transferring to the Northern District would reduce the inconvenience and expense for all of Apple's witnesses and for LBSI's most important witness, Mr. Hollenberg. And it would do so without appreciably inconveniencing any known witness.

### 3)     The Availability of Compulsory Process Favors Neither District.

"Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp.2d 867, 874 (E.D. Tex. 2013). In this case, however, neither party has identified material non-party witnesses in either the Northern District or this District. Nor is there any reason to believe that any non-party witnesses would be within the subpoena power of this District: The '956 Patent was not developed, prosecuted, or commercialized in Texas, and its inventor is based in Oregon.[2] The availability of compulsory process thus favors neither district.

In previous patent cases where the compulsory-process factor was neutral, this Court has consistently granted transfer when the transferee district hosted more relevant sources of proof and was more convenient for the party witnesses on balance. In *Kranos IP*, this Court granted transfer when evidence was in the transferee district and "no party ha[d] pointed to relevant documents or other evidence in this District." 2017 WL 3704762 at *11. In *Blue Spike, LLC v. Juniper Networks, Inc.*, this Court held that, while the convenience of non-party witnesses was neutral, the convenience for the defendants' numerous party witnesses in the Northern District outweighed the plaintiff's one witness in this District whose medical condition was otherwise a factor against transfer. No. 6:17-cv-16-KNM, 2018 WL 4222994, *4–5 (E.D. Tex. Mar. 8, 2018). Here, the locations of the parties' evidence and witnesses weigh as compellingly in favor of transfer as in those cases. *See also Acoustic Tech.*, 2017 WL 1133338 at *3 (the plaintiff "adds little to counterbalance the locus of [defendant's] evidence and witnesses" when the "relative convenience of and subpoena power over non-party witnesses does not meaningfully affect the considerations

---

[2] A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B).

supporting transfer").

4)   **Other Practical Problems Associated with Trial of This Case Are Neutral.**

Although LBSI has litigated prior cases in this District involving the '956 Patent, those cases do not tip the balance against transfer. "To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)." *In re Verizon Bus. Network Servs.*, 635 F.3d 559, 562 (Fed. Cir. 2011). Here, there are no other pending cases before this Court involving the '956 Patent. The vast majority of LBSI's previous cases ended in the initial stages. None proceeded to trial, and in only two cases did the Court conduct a claim construction hearing or hold any merits hearings or proceedings at all. Even the two cases in which claim construction orders issued offer little opportunity for judicial economy here. One of those orders was issued by a different Judge— Judge David Folsom, who retired in 2012—and the other issued over six years ago. Mem. Op. and Order, Dkt. No. 395, *LBS Innovations v. BP America Inc.*, Case No. 2:11-cv-00407 (E.D. Tex. June 20, 2013); Claim Construction Order, Dkt. No. 195, *LBS Innovations LLC v. Aaron Bros., Inc.*, Case No. 2:11-cv-00142 (E.D. Tex. Feb. 14, 2012). Both the *BP America* and *Aaron Bros.* cases ended in 2014. The Court has thus held no merits proceedings relating to LBSI or its '956 Patent in almost five years. Given the length of time since those proceedings, this Court's "previous claim construction in a case that settled more than five years before the filing of this lawsuit [is] too tenuous a reason to support denial of transfer." *In re Verizon*, 635 F.3d at 562.

Moreover, the accused products in LBSI's earlier cases are very different from those at issue here, further undermining the potential for any judicial economy. In the prior cases, LBSI accused "store, dealer, or station location interface[s]" that were implemented on a company's website for finding its physical retail locations from a personal computer. *See* Compl., p. 4, Dkt.

No. 1, *LBS Innovations LLC v. BP America Inc.*; Compl., pp. 6–7, Dkt. No. 1, *LBS Innovations LLC v. Aaron Bros., Inc.* Those cases did not involve map navigation or search features, mobile devices, or anything to do with Apple. Here, LBSI has not accused a website at all, but rather turn-by-turn directions and other search functionalities provided by a software application on a mobile device. (Dkt. No. 1, Ex. 4.) The technologies implicated in LBSI's prior cases are thus quite different than the Apple Maps features accused in this case. No matter where this case is tried, the court will have to familiarize itself with new subject matter and new technology. *In re Morgan Stanley*, 417 F. App'x. 947, 949 (Fed. Cir. 2011) (*nonprecedential*). Any residual familiarity this Court may have with the patent from prior litigation is thus outweighed by the benefits of transfer to a more suitable forum. *See id.* ("proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation").

Otherwise, this case does not present any other "practical problems" that make trial more "easy, expeditious and inexpensive" in any forum. *Volkswagen I*, 371 F.3d at 203 (citation omitted). Because no substantive proceedings have yet occurred and because there are no other pending cases, this factor cuts neither for nor against transfer.

## C.    The Public Interest Factors Favor Transfer to the Northern District.

### 1)    California Has a Strong Local Interest in the Accused Products.

The Northern District of California has a strong local interest in this case "because the cause of action calls into question the work and reputation of several individuals residing in or near that district." *In Re Hoffman-La Roche*, 587 F.3d at 1336. LBSI's action affects Apple's Cupertino-based engineers, who were "involved in the development and implementation of the accused products." *ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 779 (E.D. Tex. 2014). Further,

13

this case implicates the work of an inventor who developed his patent in California. *See supra* at p. 2.

In contrast, this District has only an extremely attenuated interest in protecting LBSI's patents.[3] The '956 Patent was developed in California, and its inventor did not and does not live in Texas. *See supra* at p. 2. LBSI is based in New York and transacts no business in Texas. It has neither an office nor employees in this state. *Supra* at p. 3. LBSI's only connection to Texas appears to be using its courts to accuse companies of infringing the '956 Patent. A "litigation-based" interest is "not considered" in the local-interest analysis. *Maz Encryption Techs., LLC v. Apricorn, Inc.*, No. 6:15-cv-979-RWS-JDL, 2016 WL 7626179, *4 (E.D. Tex. Apr. 21, 2016). On balance, the Northern District has a far stronger local interest in this case than does this District.

### 2) A Small Difference in Time-To-Trial Does Not Outweigh the Factors in Favor of Transfer.

When considering transfer requests from the Eastern District of Texas to the Northern District of California, courts in this District have frequently held the time-to-trial factor to be neutral as "[t]he Eastern District of Texas and Northern District of California have similar average times to trial." *Gonzalez v. Tagged, Inc.*, No. 2:14-cv-00906-JRG-RSP, 2015 WL 5578367, *4 (E.D. Tex. Sep. 22, 2015); *see, e.g., Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712153, *5 (E.D. Tex. Feb. 6, 2017) (finding that this factor is "essentially neutral" when the median time-to-trial for patent cases in the Northern District is 887 days, compared to 763 days in this District). Indeed, court speed is "mostly speculative, and thus has a relatively limited impact on [the] ultimate decision whether to transfer." *Uniloc USA, Inc. v. Cisco Sys., Inc.*, No. 6:15-cv-1175-JRG, 2017 WL 959856, *4 (E.D. Tex. Mar. 13, 2017) (citing

---

[3] While Apple sells accused products in this District, that is true nationally and thus irrelevant. *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-cv-364-JRG, 2012 WL 506669, *6 (E.D. Tex. Feb. 15, 2012).

*Genentech*, 566 F.3d at 1347). And when several factors weigh in favor of the transferee district, as is the case here, any difference in court speed between the districts does not outweigh the reasons for transfer. *Deep Green Wireless LLC v. Ooma, Inc.*, No. 2:16-cv-0604-JRG-RSP, 2017 WL 679643, *6 (E.D. Tex. Feb. 21, 2017) (finding this factor neutral between this District and the Northern District of California and granting transfer).

### 3)   The Remaining Public-Interest Factors Are Neutral.

The two remaining public-interest factors are also neutral. First, familiarity with the governing law is neutral: "[J]udges in both the Eastern District of Texas and Northern District of California are familiar with federal patent law." *Blue Spike, LLC v. Juniper Networks, Inc.*, 2018 WL 4222994, *6 (E.D. Tex. Mar. 8, 2018). Second, there is no prospect for any conflicts of laws; hence, the last public-interest factor is neutral.

## V.   CONCLUSION

This Court has previously granted transfer in multiple patent cases with facts similar to here. As in *Kranos IP*, all of the defendant Apple's evidence is in the transferee district, and "no party has pointed to relevant documents or other evidence in this District." 2017 WL 3704762 at *11. As in *Acoustic Tech.*, the significant number of witnesses in the Northern District without a similar presence in this District means "access to those witnesses will be more convenient from the transferee district." 2017 WL 1133338 at *2. This is especially true where the plaintiff "does not have employees or a place of business in Texas, other than a registered agent for service of process." *Id.* at *1. Indeed, LBSI has no ties to this state other than using its courts as a tactical forum to wage its litigation campaign. LBSI has no witnesses or documents here, and as in *Maz Encryption*, LBSI's "litigation-based" connection to this District bears no impact on the transfer determination. 2016 WL 7626179 at *4. This case belongs in the Northern District, and the Court should grant Apple's motion to transfer.

Date: August 8, 2019                    Respectfully submitted,

                                        By:  _/s/ Michael T. Pieja_____
                                        Michael T. Pieja (*pro hac vice*)
                                        Doug Winnard (*pro hac vice*)
                                        Shaun Zhang (*pro hac vice*)
                                        GOLDMAN ISMAIL TOMASELLI
                                          BRENNAN & BAUM LLP
                                        564 W. Randolph St., Suite 400
                                        Chicago, IL 60661
                                        Tel: (312) 681-6000
                                        Fax: (312) 881-5191
                                        mpieja@goldmanismail.com
                                        dwinnard@goldmanismail.com
                                        szhang@goldmanismail.com

                                        Melissa R. Smith
                                        GILLAM & SMITH LLP
                                        303 S. Washington Avenue
                                        Marshall, TX 75670
                                        Tel: (903) 934-8450
                                        Fax: (903) 934-9257
                                        melissa@gillamsmithlaw.com

                                        *Counsel for Defendant Apple Inc.*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that, prior to filing this motion, counsel for Apple complied with the meet-and-confer requirement of L.R. CV-7(h). Specifically, on July 12, 2019, counsel for Apple (myself) met and conferred telephonically with counsel for LBSI (Niky Bagley). During these discussions, LBSI's counsel stated that LBSI would not agree to transfer of this case from this District to the Northern District of California. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ *Michael T. Pieja*
Michael T. Pieja (*pro hac vice*)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **DEFENDANT APPLE INC.'S MOTION TO CHANGE VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA** was filed electronically this August 8, 2019, in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

/s/ *Michael T. Pieja*
Michael T. Pieja (*pro hac vice*)