# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LBS INNOVATIONS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | C.A. No. 2:19-cv- 00119-JRG |
| v. | § | |
| | § | Jury Trial Demanded |
| APPLE INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

---

## PLAINTIFF LBS INNOVATIONS, LLC'S
## OPENING CLAIM CONSTRUCTION BRIEF

---

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

THE ASSERTED PATENT ................................................................................................ 1

GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION ....................................... 3

LEVEL OF SKILL IN THE ART ........................................................................................ 6

DISCUSSION ..................................................................................................................... 7

    A.    Agreed Claim Constructions ................................................................................ 7

    B.    Disputed Claim Terms and Phrases ..................................................................... 7

        1.    The preamble of Claim 11 including "making apparent to the aural and tactile senses of the user" ......................................................................................... 7

        2.    "mappable hypertext items" .................................................................... 12

        3.    "displaying" ......................................................................................... 13

        4.    "selectably scalably" ............................................................................. 15

        5.    "a data field" ........................................................................................ 16

        6.    "optionally executably selected by said user to provide additional of said situation information" ......................................................................... 18

        7.    "item reference field," "name field," and "location field" ........................ 20

    C.    Disputed Claim Terms and Phrases Defendant Asserts Are Indefinite ........................ 24

        1.    "converting said coordinates to an appropriately proportionate representation" ....... 25

        2.    Step (c) of Claim 11 ................................................................................ 28

CONCLUSION ................................................................................................................ 30

# TABLE OF AUTHORITIES

Page(s)

**<u>Cases</u>**

*Abb Automation Inc. v. Schlumberger Res. Mgmt. Servs., Inc.*,
    254 F.Supp. 2d 475 (D. Del. 2003) ........................................................................... 9

*Acceleration Bay, LLC v. Activision Blizzard, Inc.*,
    908 F.3d 765 (Fed. Cir. 2018) ................................................................................... 8

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002) ................................................................................. 8

*Altiris, Inc. v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003) ................................................................................. 9

*Am. Med. Sys. v. Biolitec, Inc.*,
    618 F.3d 1354 (Fed. Cir. 2010) ................................................................................. 9

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
    340 F.3d 1298 (Fed. Cir. 2003) ................................................................................. 4

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008) ................................................................... 17, 18, 24

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006) ................................................................................. 10

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
    783 F.3d 1374 (Fed. Cir. 2015) ............................................................................... 25

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002) ..................................................................... 8, 10, 11

*CCS Fitness, Inc. v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002) ........................................................................... 4, 22

*Daiichi Sankyo Co. v. Apotex, Inc.*,
    501 F.3d 1254 (Fed. Cir. 2007) ............................................................................. 6, 7

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005) ......................................................................... 25, 26

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................................... 25

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012)......................................................................... 25

*Freeny v. Apple Inc.*,
    No. 2:13-CV-00361-WCB, 2014 WL 4294505 (E.D. Tex. Aug. 28, 2014).................... 24

*Georgetown Rail Equip. Co. v. Holland L.P.*,
    867 F.3d 1229 (Fed. Cir. 2017)....................................................................... 10

*Helmsderfer v. Brobrick*,
    527 F. 3d 1379 (Fed. Cir. 2008)............................................................... 3, 4, 22

*Innovative Display Techs. LLC v. Hyundai Motor Co.*, No. 2:14-CV-201-JRG,
    2015 WL 2090651 (E.D. Tex. May 4, 2015)...................................................... 4

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)....................................................................... 25

*Koninklijke KPN N.V. v. Samsung Elecs. Co.*,
    No. 2:14-CV-1165-JRG, 2016 WL 2610649 (E.D. Tex. May 6, 2016) ........................... 9

*Kraft Foods, Inc. v. Int'l Trading Co.*,
    203 F.3d 1362 (Fed. Cir. 2000)....................................................................... 20

*Lazare Kaplan Int'l, Inc. v. Photoscribe Technologies, Inc.*,
    628 F.3d 1359 (Fed. Cir. 2010)........................................................................ 5

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)......................................................................... 20

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)........................................................................... 5

*Mars, Inc. v. H.J. Heinz Co., L.P.*,
    377 F.3d 1369 (Fed. Cir. 2004)........................................................................ 5

*Micron Technology, Inc. v. Tessera, Inc.*,
    440 F.Supp. 2d 591 (E.D. Tex. 2006) ............................................................... 9

*Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*,
    572 F. Supp. 2d 786 (E.D. Tex. Aug. 14, 2008) ................................................... 9

*Morton International, Inc. v. Cardinal Chemical Co.*,
    5 F.3d 1464 (Fed. Cir. 1993)......................................................................... 30

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

*Nautilus Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ........................................................................ 24, 25

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
    521 F.3d 1351 (Fed. Cir. 2008) ................................................................ 4

*Omega Eng'g, Inc, v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ....................................................... 4, 5, 11

*Orion IP, LLC v. Staples, Inc.*,
    406 F. Supp. 2d 717 (E.D. Tex. 2005) ...................................................... 21

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006) ................................................................. 5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ....................................................... 3, 5, 13

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999) ................................................................. 8

*S3 Inc. v. nVIDIA Corp.*,
    259 F.3d 1364 (Fed. Cir. 2001) .............................................................. 30

*SanDisk Corp. v. Memorex Products, Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005) ................................................................. 5

*Schindler Elevator Corp. v. Otis Elevator Co.*,
    593 F.3d 1275 (Fed. Cir. 2010) ................................................................. 5

*Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*,
    373 F. Supp. 3d 1288 (N.D. Cal. 2019) ....................................................... 8

*SRAM Corp. v. AD-II Eng'g. Inc.*,
    465 F.3d 1351 (Fed. Cir. 2006) ................................................................. 3

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) ................................................................. 4

*Storage Tech. Corp. v.Cisco Sys., Inc.*,
    329 F.3d 823 (Fed. Cir. 2003) ................................................................. 8

*Sumitomo Dainippon Pharma Co. v. Emcure Pharm. Ltd.*,
    887 F.3d 1153 (Fed. Cir. 2018) ................................................................. 5

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

*Summit 6, LLC v. Samsung Elecs.*,
   802 F.3d 1283 (Fed. Cir. 2015)........................................................................ 8

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
   522 F.3d 1279 (Fed. Cir. 2008)........................................................................ 9

*Terlep v. Brinkmann Corp.*,
   418 F.3d 1379 (Fed. Cir. 2005)........................................................................ 3

*Thorner v. Sony Comput. Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012)................................................................. 5, 22

*TomTom, Inc. v. Adolph*,
   790 F.3d 1315 (Fed. Cir. 2015)...................................................................... 10

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997)........................................................................ 3

*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009)........................................................................ 5

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)..................................................................... 3, 5

## <u>Statutes</u>

35 U.S.C. § 112.............................................................................................. 24, 25

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

Plaintiff LBS Innovations, LLC ("Plaintiff" or "LBSI"), pursuant to the Court's Amended Docket Control Order [Dkt. 46] and P.R. 4-5(a), submits this Opening Claim Construction Brief and alleges as follows:

## INTRODUCTION

U.S. Patent No. 6,091,956 ("the '956 Patent," attached as Exhibit 1) has undergone claim construction twice in this Court – first by Judge Folsom (now retired) in *LBSI Innovations LLC v. Aaron Bros. et al.*, Civil Action No. 2:11-cv-00142-MHS at Dkt. 195 ("*Aaron Bros.* Action")[1] and again by Judge Gilstrap in *LBSI Innovations LLC v. BP America, Inc., et al.*, Civil Action No. 2:11-cv-00407 at Dkt. 395 ("*BP* Action").[2] LBSI does not believe that further construction is necessary, except with respect to one phrase that requires clarification. Defendant, on the other hand, proposes to discard most of the Court's prior findings and requests that certain claim terms be found to be indefinite or construed in a manner that is inconsistent with the Court's previous findings. Defendant's approach should be rejected and LBSI's proposed constructions adopted.

## THE ASSERTED PATENT

LBSI is the owner of the '956 Patent, entitled "Situation Information System" and invented by Dennis D. Hollenberg. The application for the '956 Patent was filed on June 12, 1997, and issued on July 18, 2000.

The claimed "Situation Information System" pertains to "information about events or conditions associated with places" that the user of a computer device may encounter or consider visiting. '956 Patent, Col. 4:33–47. In one embodiment, "the situation information system provides users with up-to-date map-tracking information relating their location to events and situations as well as enabling them to respond in a timely manner." '956 Patent, Col. 4:48–51. The specification teaches, for example, a "distributed system of information service providers which provide data about geographical features . . . and transmit[s] that data . . . for display." '956 Patent, Col. 8:34–38. The specification additionally discloses that service providers display "mappable information

---

[1] A copy of Judge Folsom's Claim Construction Order is attached as Exhibit 2.
[2] A copy of Judge Gilstrap's Claim Construction Order is attached as Exhibit 3.

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

items, including map features . . . which may be executably selected by a user to display additional information…by receiving new information transmitted from the service provider." '956 Patent, Col. 21:55–62. "Separation between displayed features," as taught in another embodiment, include calculations "using distances derived from latitude and longitude, which have been appropriately converted to distance relationships." '956 Patent, Col. 22:65–23:3.

One method for use of the inventive situation information system is described in asserted Claim 11, which comprises the steps of (a) "searching each of one or more unique mappable information code sequences…for a field containing geographic coordinates," (b) "converting said coordinates," and (c) "displaying selectably scalably said [mappable hypertext] items." '956 Patent, Col. 31:24–45. This is the claim asserted by Plaintiff LBSI against the Defendant. The text of Claim 11 provides as follows:

> A method of communicatively executing, including **making apparent to the aural and tactile senses of the user**, one or more transmittable **mappable hypertext items** representing people, organisms, and objects, including buildings, roads, vehicles, and signs, on **a computer** in a manner scalably representing interrelationships of said objects, comprising the steps of:
>
> a.  searching each of one or more unique mappable information code sequences, each of which said code sequences serving to uniquely represent one of said **items** and copied from the memory of **said computer** or received from an alternate source, for a field containing geographical coordinates, said each of said code sequences includes an _item reference field, a name field, a location field_ including said geographical coordinates, and **a data field**,
>
> b.  **converting said coordinates to an appropriately proportionate representation** on **said computer**, and
>
> **(c)  displaying selectably scalably** said **items** on **said computer whereby said user may quickly receive and display timely situation information mapped in the context of spatial information**, including appropriate to a geographical or other area, in which said **mappable hypertext items** are quickly received, mapped, and **optionally executably selected by said user to provide additional of said situation information or received, stored, and transmitted by a provider of said situation information**.

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

As discussed above, this Court has previously construed or evaluated all of the terms and phrases of Claim 11 at issue in this case, indicated in bold, except for the three italicized terms: "item reference field," "name field," and "location field," none of which require construction. The Court's prior constructions are discussed in detail below.

## GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION

This Court is well versed in the general law governing claim construction. Therefore, LBSI will only highlight some of the specific points of law especially relevant to this case.

"Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claim, for use in the determination of infringement." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005). In several instances, the Defendant makes thinly veiled attempts to write entirely new phrases into Claim 11. Defendant's efforts at re-writing should be rejected. Although the Court must interpret disputed claim terms, in interpreting a claim, a court is "powerless to rewrite the claims and must construe the language of the claim at issue based on the words used." *SRAM Corp. v. AD-II Eng'g. Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006); *Helmsderfer v. Brobrick*, 527 F. 3d 1379, 1383 (Fed. Cir. 2008).

Defendant also asserts that certain terms need construction even though the terms would have been readily understood by those skilled in the art. As to these, LBSI requests that the Court simply stand on the claim terms as written. The words of a claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F. 3d at 1313. "Claim construction … is not an obligatory exercise in redundancy." *U.S. Surgical Corp.*, 103 F.3d at 1568. "District courts are not (and should not be)

required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). The Federal Circuit "has repeatedly held that a district court is not obligated to construe terms with ordinary meaning, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *Id.* at 1360; *see also Innovative Display Techs. LLC v. Hyundai Motor Co.*, No. 2:14-CV-201-JRG, 2015 WL 2090651, at *6 (E.D. Tex. May 4, 2015) (*citing O2 Micro* and declining to further construe certain claim terms).

The Defendant also proposes to import limitations from the specification into the claims. Such a proposition is improper. "That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). Likewise, the claims cannot be limited by embodiments disclosed in the figures shown in the specification. *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306–07 (Fed. Cir. 2003) ("[T]he mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration."). Further, a "patentee need not describe in the specification every conceivable and possible future embodiment of his invention." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).

Indeed, there is "a 'heavy presumption' that claim terms carry their full ordinary and customary meaning . . . unless the patentee unequivocally imparted a novel meaning to those terms [*i.e.,* acted as her own lexicographer] or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). As the Federal Circuit stated in *Helmsderfer*, the "[patentee] did not act as its own lexicographer and alter the ordinary meaning of the term 'partially,' we cannot construe these particular claims to encompass the preferred embodiment or other illustrated embodiments. Courts cannot rewrite claim language." *Helmsderfer v. Bobrick Washroom Equip., Inc*., 527 F.3d 1379, 1383 (Fed. Cir. 2008). The Federal Circuit has held "[a]s a general rule, the ordinary and customary meaning controls unless 'a patentee sets out a definition and acts as his own lexicographer, or...the patentee disavows the full

— 4 —

scope of a claim term either in the specification or during prosecution.'" *Sumitomo Dainippon Pharma Co. v. Emcure Pharm. Ltd.*, 887 F.3d 1153, 1157 (Fed. Cir. 2018) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

On the other hand, the Federal Circuit has consistently stated that the patentee's disavowal of claim scope must be clear and unmistakable. *Lazare Kaplan Int'l, Inc. v. Photoscribe Technologies, Inc.*, 628 F.3d 1359, 1370 (Fed. Cir. 2010); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009); *Omega*, 334 F.3d at 1326. There is no clear and unmistakable disavowal where the prosecution argument "is subject to more than one reasonable interpretation." *SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005). "It is inappropriate to limit a broad definition of a claim term based on prosecution history that is itself ambiguous." *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1377 (Fed. Cir. 2004); *see Omega*, 334 F.3d at 1325. In other words, "ambiguous disavowal" does not suffice. *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010).

Finally, the Defendant relies on expert testimony to assert that certain terms are indefinite. Extrinsic evidence, such as expert testimony, may be considered in claim construction only where such evidence is not contrary to the claim construction mandated by the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1318; *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995); *Vitronics*, 90 F.3d at 1583. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms..." *Phillips*, 415 F.3d at 1318. Written extrinsic evidence, especially evidence such as technical dictionaries, is more reliable and helpful than testimonial extrinsic evidence and remains a valuable and permissible resource for determining the meaning of disputed claim terms. *Phillips*, 415 F.3d at 1314, 1318. The Court may appropriately look to dictionary definitions to determine the plain and ordinary meaning of claim terms. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1306 (Fed. Cir. 2006).

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

## LEVEL OF SKILL IN THE ART

The level of ordinary skill is a function of many factors, including: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (citation omitted).

Plaintiff argues, as it has in prior cases, that the factors set forth in *Daiichi Sankyo* dictate that a hypothetical person of ordinary skill in the art at the time of the invention would have had either (1) a Bachelor degree in computer science or computer engineering; (2) a Bachelor's degree in any engineering field with additional education or relevant experience in, for example, web browsers and software applications, the Internet, or networking technologies, or, alternatively, experience in computer programming languages (such as PHP, C, C++, Java, SQL, HTML, and JavaScript), and web/other software application development; or (3) related class work not leading to a Bachelor's degree but sufficient experience in the technologies enumerated above that together approximate the level of skill described.

Plaintiff LBSI submits the above description of a person of ordinary skill in the art based on its expert's opinion provided in previous matters involving the '956 Patent. *See* Declaration of Scott A. Denning at ¶¶ 15-18, *LBS Innovations, LLC, v. Nokia USA INC., et al.*, Civil Action No. 2:15-cv-01972, Dkt. 137-8, attached as Exhibit 8. As Mr. Denning has asserted, the inventor had some, but not extensive, knowledge of computer programming and the inventor did not have a Bachelor's degree in computer science or engineering of any kind. *Id.* ¶ 19; *see also* Exhibit 10, Inventor Hollenberg Depo. Trans., May 30, 2012, at 12:6-13 (testifying that he received a Bachelor's of Arts in physical sciences and no graduate degree); *see generally id.* at 12-28 (testifying regarding work experience); Exhibit 11, Inventor Hollenberg Depo. Trans., August 6, 2013, at 10:10-18:4 (testifying regarding experience with computer programs and software development). The types of programs encountered in the field of the '956 Patent did not require mastery of engineering. Ex. 8 ¶ 20 (detailing the problems encountered at the time of the '956

— 6 —

Patent and available solutions). Additionally, the technologies described in the '956 Patent do not require great complexity and would have been readily implemented by those with a Bachelor's degree in computer science or computer engineering or who would have otherwise had equivalent experience and knowledge as described above. *Id.* ¶ 21.

Defendant's expert, on the other hand, asserts that in addition to a Bachelor's degree one skilled in the art would have had "at least two years' work or research experience in software engineering or computer systems." Ex. 9, Patterson Dec. at ¶ 22. Dr. Patterson makes this assertion without conducting an analysis of the factors enumerated in *Daiichi Sankyo* and without any apparent justification. *See id.* The additional experience requirement Dr. Patterson advocates is unnecessary given the relative simplicity of the technology at issue, which would have been readily implemented by those with the education and/or experience described above.

## DISCUSSION

### A.    Agreed Claim Constructions

The parties have agreed to the construction of the following terms:

| PROPOSED CLAIM TERM | PROPOSED AGREED CONSTRUCTION |
|---|---|
| timely situation information | "up-to-date information about an event, or a condition, occurring or about to occur at a place" |
| a computer/said computer | "the same computer that performs the other steps recited in the claim" |

LBSI respectfully requests that the Court adopt these proposed agreed constructions.

### B.    Disputed Claim Terms and Phrases

#### 1.    The preamble of Claim 11

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| The preamble of claim 11:<br><br>"A method of communicatively executing, including making apparent to | The preamble is not a limitation as previously determined by the Court. | The preamble acts as a limitation on the claim. |

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| the aural and tactile senses of the user, one or more transmittable mappable hypertext items representing people, organisms, and objects, including buildings, roads, vehicles, and signs, on a computer in a manner scalably representing interrelationships of said objects," including the phrase "making apparent to the aural and tactile senses of the user" | | |

In accordance with well-established claim construction principles, the preamble is not a limitation except to the extent that the phrase "one or more transmittable mappable hypertext items" is the antecedent reference for the term "items" and "a computer" is the antecedent reference for the term "said computer" in the body of Claim 11.

Whether to treat a preamble term as a claim limitation is "determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 831 (Fed. Cir. 2003). Under Federal Circuit precedent "a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Acceleration Bay, LLC v. Activision Blizzard, Inc.,* 908 F.3d 765, 770 (Fed. Cir. 2018) (quotation marks and citations omitted); *see also Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1346 (Fed. Cir. 2002) ("Generally, the preamble does not limit the claims."); *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC,* 373 F. Supp. 3d 1288, 1298 (N.D. Cal. 2019) ("A preamble is generally not construed to limit the claim language that follows.") (citing *Summit 6, LLC v. Samsung Elecs.,* 802 F.3d 1283, 1292 (Fed. Cir. 2015)). The preamble may only be construed as limiting "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1305 (Fed. Cir. 1999)). A preamble is

not limiting when it "merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention." *Am. Med. Sys. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010). If the preamble "is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a [prior art] rejection), we do not construe it to be a separate limitation." *Symantec Corp. v. Computer Assocs. Int'l, Inc.,* 522 F.3d 1279, 1288-89 (Fed. Cir. 2008); *see also Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*, 572 F. Supp. 2d 786, 799 (E.D. Tex. Aug. 14, 2008) (holding that, when the preamble does not limit claim scope, it is "of no significance to claim construction" and does not require construction) (*quoting Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371 (Fed. Cir. 2003)).

In some instances, as this Court has explained, "[w]hen limitations in the body of a patent claim rely upon, and derive antecedent basis from, the claim preamble, the preamble may act as a necessary component of the claimed invention." *Micron Technology, Inc. v. Tessera, Inc.*, 440 F.Supp. 2d 591, 614 (E.D. Tex. 2006). In such a circumstance, however, only the antecedent references in the preamble constitute claim limitations, and the preamble as a whole does not. *See Abb Automation Inc. v. Schlumberger Res. Mgmt. Servs., Inc.*, 254 F.Supp. 2d 475 (D. Del. 2003) (finding that although the antecedent basis for "said input voltage" is within the preamble, "the phrase 'for use in apparatus for electronically measuring or distributing electrical energy' merely indicates an intended use and does not operate to limit the scope of the claims.").

In *Micron*, for example, this Court found that the phrase "a memory array in which a plurality of memory circuit devices are arranged" was limiting because "memory array" and "memory circuit devices" provided an antecedent basis for those terms in the body of the claim in question. *Micron*, 440 F.Supp. 2d at 614-615. "However," the Court held, "the remainder of the preamble is not limiting because it describes the claimed invention's purpose or intended use, rather than describing essential structure. [citations omitted]. This segment of the preamble describes how the arrangement of memory devices may allow memory information to be obtained, but it does not describe any essential structure." *Id.* at 615; *see also Koninklijke KPN N.V. v.*

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

*Samsung Elecs. Co.*, No. 2:14-CV-1165-JRG, 2016 WL 2610649, at *14 (E.D. Tex. May 6, 2016) (finding that the Defendants had not demonstrated that the entirety of the preamble is limiting) (quoting *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015) ("That [a] phrase in the preamble...provides a necessary structure for [the] claim...does not necessarily convert the entire preamble into a limitation, particularly one that only states the intended use of the invention.")).

Here, the claims are analogous to the claim addressed in *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229 (Fed. Cir. 2017). The preamble of the claim at issue in *Georgetown* recited a "system for inspecting a railroad track bed, including the railroad track, to be mounted on a vehicle for movement along the railroad track." *Id*. at 1234. While the phrase "mounted on a vehicle for movement along the railroad track" was deemed by the Federal Circuit to describe the "principal intended use of the invention," it was held not limiting. *Id*. at 1236–37. The Federal Circuit held that the "location of the system is not an essential feature of the invention," as the patent provided that it may be located other than on the vehicle. *Id*. Thus, the preamble recitation of "mounted on a vehicle for movement along the railroad track" was not limiting.

For the same reason, the preamble to Claim 11 as a whole is not a claim limitation. Only the antecedent references "one or more transmittable mappable hypertext items" and "a computer" are limitations. The patentee did not rely on the phrase to define the invention or overcome prior art. Importantly, the language in the preamble is not necessary to give life, meaning, and vitality to the claims. It merely describes a potential use of the invention. Use descriptions such as the disputed phrase are rarely treated as claim limitations. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) ("[p]reamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim."). The phrase could be deleted from the claim without having any effect on the claimed method. Where "deletion of the preamble phrase does not affect the structure or steps of the claimed invention," the preamble cannot be deemed as a limitation. *Catalina*, 289 F.3d at 809. Claim 11 of the '956 Patent is a method claim that enumerates the necessary steps only in the body of the claim. No steps are recited in the preamble. The steps of the method of Claim 11 are entirely laid out in the body of

— 10 —

the Claim: "searching each of one or more unique mappable information code sequences . . . for a field containing geographic coordinates…," "converting said coordinates . . . ," and "displaying selectably scalably said items. . . ." '956 Patent, Col. 31:24-45. Deletion of the disputed preamble language would, otherwise, not change or affect the method claimed.

Judge Folsom thoroughly addressed this issue in the *Aaron Bros.* claim construction order and ruled that the language "making apparent to the aural and tactile senses of the user"[3] is not a limitation but merely a statement of purpose or intended use for the invention. *See* Ex. 2, *Aaron Bros.* Action, Dkt. 195 at 6–10.  In that ruling, Judge Folsom made the following findings:

> On its face, to "make[]" something "apparent" to the user is "a purpose or intended use for the invention." *Catalina Mktg.*, 289 F.3d at 808. In other words, it is set forth as an intended result, not as a step of the claimed method. This result is not "necessary to give life, meaning, and vitality" to the claim because the steps of the method can be performed without successfully making anything "apparent" to the user. *Id.*
>
> \*     \*     \*
>
> Finally, Defendants have not shown that the term at issue was the subject of any discussion by the Examiner or the patentee during prosecution. The mention of the term at issue together with other limitations of the claim in the Notice of Allowability is not enough to rebut the general principle that the preamble is not a limitation.
>
> \*     \*     \*
>
> The Court therefore finds that "including making apparent to the aural and tactile senses of the user" is not a limitation of Claim 11.

Ex. 2, Dkt. 195 at 9–10.

This Court again reviewed the issue in the *BP Action* and analyzed the intrinsic record, including the prosecution history of the '956 Patent. Ex. 3, *BP Action*, Dkt. 395 at 31–35. After a detailed analysis, the Court found that "Defendants have failed to establish a 'clear and unmistakable' disclaimer of claim scope." *Id.* at 35 (citing *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003)). Both Judge Folsom and this Court's analysis and conclusion

---

[3] Defendant has not made clear exactly what about the preamble is a limitation. As LBSI agrees that "one or more transmittable mappable hypertext items" and "a computer" serve as antecedent references, what remains is the phrase "making apparent to the aural and tactile senses of the user."

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

are correct and should be reaffirmed here. To the extent further analysis on this issue is needed, LBSI incorporates by reference its prior briefing. *See* Exs. 4 at 8, 5 at 4, 6 at 1, and 7 at 6.

### 2. "mappable hypertext items"

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| "mappable hypertext items" | "text or one or more symbols, displayable on a map, that can be selected to access additional information" | "Text or one or more symbols, displayable on a map, that can be selected" |

The phrase "mappable hypertext items" should be construed as "text or one or more symbols, displayable on a map, that can be selected to access additional information." Although Defendant's proposed construction is similar, LBSI's proposed construction is better aligned with the intrinsic and extrinsic evidence and comports with the Court's prior constructions. *See* Ex. 2, *Aaron Bros.* Action, Dkt. 195 at 14; Ex. 3, *BP Action*, Dkt. 395 at 11.

Claim 11 recites "searching each of one or more unique mappable information code sequences, each of which said code sequences serving to uniquely represent one of **said items** and copied from the memory of said computer or received from an alternate source, for a field containing geographical coordinates . . . ." '956 Patent, Col. 31:24-29 (emphasis added). As discussed above, "said items" refers back to the initial antecedent phrase "mappable hypertext items" contained in the preamble. The Claim further requires "**displaying** selectably scalably said [mappable hypertext items] on said computer whereby said user may quickly **receive** and **display** timely situation **information** mapped in the context of spatial **information**." '956 Patent, Col. 31:35-38 (emphasis added). As is evident from the language of the claim, a "mappable hypertext item" is displayable and can be selected to access additional information.

Additionally, the inventor has defined this term in the specification consistent with LBSI's proposed construction. The specification teaches that "a computer memory organized to include mappable hypertext code 29 sequence . . . **which may be executably selected by a user in order to display additional information** . . . code 29 provides for graphically **displaying** on

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

the user's display **symbols or text . . . in a manner which shows each item in a measurably appropriate relation to other such items**." '956 Patent, Col. 21:55-22:4 (emphasis added); *see also* Col. 11:23-26 ("[M]appable hypertext code sequence" is "individually called mappable hyper-text items"). In describing another embodiment, the inventor states, "graphical display unit…shows information including . . . direction symbol . . . which **symbol can be a mappable hypertext item** that the **user may executably select in order to receive additional information**." '956 Patent, Col. 12:22-36 (emphasis added); *see also* '956 Patent, Col. 13:30-38 ("[M]appable hypertext items, may be executably selected by user to provide additional information…"). When the inventor reveals a special definition given to a claim term, the inventor's lexicography governs. *Phillips*, 415 F.3d at 1316.

The extrinsic evidence likewise supports LBSI's construction. Hypertext is "a method of storing data through a computer program that allows a user to create and link fields of information at will and to retrieve the data nonsequentially." Ex. 12, *Random House Unabridged Dictionary* 942 (2nd ed. 1993). Hypertext can also refer to "[a] way of presenting information online with connections between one piece of information and another, called hypertext links." Ex. 12, *IBM Dictionary of Computing* 321 (10th ed. 1993). An "item" is "a separate piece of information." Ex. 12, *Random House Unabridged Dictionary* 1016 (2nd ed. 1993). Thus, LBSI's proposed construction is fully supported by the intrinsic and extrinsic evidence.

Accordingly, the Court should construe "mappable hypertext items" as "text or one or more symbols, displayable on a map, that can be selected to access additional information."

### 3. "displaying"

| Disputed Terms for Construction | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "displaying" | "said computer causing to appear" | No construction required |

The relevant language of Claim 11 states "displaying . . . said items on said computer whereby said user may quickly receive and display timely situation information . . . ." '956 Patent,

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

Col. 31:36-38. This language demonstrates that the claimed method requires making the "mappable hypertext items" appear on one or more computers so a user can, but is not required to, receive and display timely situation information. The claim language does not require any specific person (or category of persons), such as a user of mappable hypertext items, to do the displaying. The "displaying" language does not denote the performer of that action.

The specification supports LBSI's construction. For example, in one embodiment "a menu of available lists are **caused to appear** on [a] device display…" '956 Patent, Col. 25:18-21 (emphasis added); *see also* '956 Patent, Col. 16:30. In another embodiment, when "the user's location . . . approaches within a selectable distance . . . proximate station banner . . . **appears on [a] display** . . . ." '956 Patent, Col. 13:30-33. A different mode of the invention allows a user to "conduct a search of current service-provider information and which **results appear on [a] display**...." '956 Patent, Col. 13:50-51. The inventor uses similar descriptions to teach other embodiments. *See, e.g.*, '956 Patent, Cols. 16:30, 19:28-30, 22:18-22. Additionally there is nothing in the prosecution history that compels a different construction. Thus, the Court should clarify the meaning of the term "displaying" by construing it to mean "causing to appear."

Judge Folsom and this Court have previously followed Plaintiff's proposed construction and construed the term "displaying" to mean "said computer causing to appear." Ex. 2, *Aaron Bros.* Action, Dkt. 195 at 19–21; Ex. 3, *BP Action*, Dkt. 395 at 43–44. In doing so, both Judge Folsom and this Court analyzed the claim language along with the intrinsic record and concluded that the construction "said computer causing to appear" is well supported. Ex. 2 at 19–21; Ex. 3 at 43–44. For example, this Court pointed to the following:

> [I]n one embodiment "a menu of available lists are *caused to appear* on [a] device display…" '956 Patent at 25:18-21 (emphasis added). In another embodiment, when "the user's location … approaches within a selectable distance … proximate station banner … *appears on display* 4a …" shown in Figure 2. '956 Patent at 13:30-33. The inventor uses similar descriptions to teach other embodiments. *See, e.g.*, '956 Patent, Col. 16:30, 19:28-30, 22:18-22.

Ex. 3 at 44 (emphasis in original).

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

Defendant's proposed construction does not provide any guidance as to who or what is performing the "displaying" step. As Judge Folsom previously explained, "the best reading of Claim 11 in light of the specification as a whole is that the 'computer' of Claim 11 does the 'displaying' of the items and that the user may then 'optionally executably select[]' an item or items." Ex. 3 at 21. Without an explicit finding that "said computer" performs the step of "displaying," Defendant may improperly assert an unsupported divided infringement theory.

LBSI's previous claim construction briefs also point to substantial intrinsic evidence supporting its proposed construction. *See* Exs. 4 at 20; 5 at 13; 6 at 8; and 7 at 8.  The Court's prior reasoning, thus, is correct and should not be disturbed.

### 4. "selectably scalably"

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| "selectably scalably" | "capable of being chosen for adjustment in size or detail" | Scalably: in the scale of the area to be viewed in the display.<br><br>The term "selectably" requires no construction. |

The phrase "selectably scalably" has been previously construed by the Court, per agreement of the parties, to mean "capable of being chosen for adjustment in size or detail." Ex. 2 at 6; Ex. 3 at 11. Defendant asserts that the phrase only need be construed as to "scalably." Once again, Defendant ignores the prior construction of the Court and suggests an alternative construction. This construction is not supported by case law or by the '956 Patent. The specification, is instructive:

> All the aforementioned items are displayed according to their geographic locations in the scale of the area to be viewed on the display, which area to be viewed is selectable and may be zoomed in or out, for example, along with the user's location symbol 6r."

'956 Patent, Col. 22:51-54 (also cited by Defendant).

> As they approached their hotel, the map display would zoom in to reveal increasing detail, ultimately positioning them at the hotel's entrance.

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

'956 Patent, Col. 6:44-48.

> [T]he item name can be subsequently selected by a user to automatically provide additional information about the item, such as by enlarging the detail, called zooming in, or, for example, as hypertext, in which the item name or symbol can be selected or clicked on by a user to provide additional information.

'956 Patent, Col. 22:25-28 (also cited by Defendant). Accordingly, the specification teaches that the "area to be viewed is selectable and may be zoomed in or out," zooming in on the map "reveal[s] increasing detail," while the items themselves may be selected to "provide additional information about the item." '956 Patent, Col. 22:25-28; Col. 22:51-54.

Defendant's construction unnecessarily limits the claim by attempting to impose a limitation from the specification and is redundant of the "converting" step, in which "said coordinates" are converted to "an appropriately proportionate representation on said computer." Further, the Defendant's proposed construction fails to account for the map being adjustable in size or detail and, instead, requires that a static map be used to display the items. Defendant's proposed construction also suggests scaling of *the items* instead of scaling of *the map* in which the items are displayed. The Defendant ignores the very teaching they rely on: "items are displayed according to their geographic locations in the scale of the area to be viewed on the display, which *area to be viewed is selectable* and *may be zoomed in or out*…" *See* '956 Patent, Col. 22:51-54. LBSI asks that the Court reject Defendant's attempt to import a limitation from the specification into the claims and adopt the proposed construction, of "capable of being chosen for adjustment in size or detail" as supported by the intrinsic evidence.

5. **"a data field"**

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| "a data field" | "one or more fields that provide: (1) information as to whether the item's symbol, icon, or name is capable of being included with other items in an executably | A field that provides information as to whether the item is capable of being included with other items in an executably selectable menu that appears on the |

PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| | selectable menu that appears on the user's computer display; and (2) information as to whether the item is to be included in a map displayed on the user's computer, and, if displayed, whether the item's symbol, icon, or name can be subsequently selected to provide additional information about the item" | user's computer display, whether it is to be included in the map displayed on the user's computer, and, if displayed, whether the item can be subsequently selected by a user to automatically provide additional information about the item, and that also includes executable code for animated icons or avatars.<br><br>If the Court does not adopt Apple's proposed claim construction, this term is indefinite. |

LBSI agrees with the Court's prior construction of "data field" but additionally asks that the term "data field" be construed in conjunction with the indefinite article that modifies it: "*a data field.*" The Federal Circuit in *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008), has declared the general rule that claim language using the indefinite article "a" means "one or more." Applying the general rule is consistent with the teachings of the '956 Patent. As the Court has previously found, the '956 Patent describes "[e]lement data type 29d" as providing multiple types of information about an item. This information includes: (1) whether the item's symbol is capable of being included with other items; (2) whether the item is to be included on the map displayed on the user's computer; and (3) whether the item's symbol can be selected by a user. '956 Patent, Col. 22:15-30. The '956 Patent teaches that "[e]ach feature is identified by a code or byte sequence containing *fields* for the name, global location, and if applicable, Universal Resource Locator (URL), as well as *variables* for formatting and graphical symbol to be displayed or otherwise executed…" '956 Patent, Col. 8:43–47 (emphasis added). The extrinsic evidence likewise supports LBSI's construction. A field is defined as "***one or more related characters*** treated as a unit and constituting part of a record for purposes of input processing, output, or storage

— 17 —

by a computer..." Ex. 12, *Random House Unabridged Dictionary* 714 (2nd ed. 1993) (emphasis added). Thus, one skilled in the art would have known that the information provided by the "data field" could be contained in one or more fields.

Thus, the phrase "a data field" is not limited to a single field and should be construed under the general rule to mean "one or more fields…"

### 6. "optionally executably selected by said user to provide additional of said situation information"

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| "optionally executably selected by said user to provide additional of said situation information" | "displayed in a manner that permits the user to select the item so as to provide additional situation information about the item" | "additional of said situation information": New information transmitted from the service provider.<br><br>The remainder of this phrase does not require construction.<br><br>If the Court does not adopt Apple's proposed claim construction, this term is indefinite. |

The phrase "optionally executably selected by said user to provide additional of said situation information" has been previously construed by the Court as LBSI proposes. *See* Ex. 2 at 21; Ex. 3 at 11. However, the construction has previously been agreed to by the parties. *Id.* Here, the parties have not agreed and their disagreement focuses primarily on the phrase "provide additional of said situation information," and whether this phrase requires "new"[4] information from "the service provider." As shown below, such a limitation should not be read into the claim.

Defendant attempts to read such a limitation from the specification into the claim using a single citation mentioning receiving "new information from the service provider." The citation is:

---

[4] It is not clear whether by "new" Defendant means "different from" or "previously unprovided" or something else. Because of this ambiguity, Defendant's construction should be rejected.

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

> A computer memory organized to include mappable hypertext code sequence **29** in **FIG. 12** provides for rapid display of mappable information items…certain of which may be executably selected by a user in order to display additional information related to any of such items, called a hypertext element, **by receiving new information transmitted from the service provider**.

'956 Patent, Col. 21:55-62 (emphasis added). However, sole reliance on the above discussion ignores other key teachings from Claim 11 and the specification, which support Plaintiff's position.

As an initial matter, Claim 11 does not require that the "additional of said situation information" be provided by "a service provider." *See generally* '956 Patent, Col. 31:17-44. Step (c) teaches that the "hypertext items are quickly received, mapped, and optionally executably selected by said user to provide additional of said situation information **_or_** received, stored, and transmitted by a provider of said situation information." Col. 31:40-44. The disjunctive "or" provides that the hypertext items may be (1) "received, mapped, and optionally executably selected by said user to provide additional of said situation information" or, alternatively, may be (2) "received, stored, and transmitted by a provider of said situation information." Although the "additional of said situation information" may be transmitted by a service provider, it does not have to be. This understanding comports with other language of Claim 11 that provides "code sequences…[are] copied from the memory of said computer or received from an alternative source." Col. 31:25-28. Un-asserted, dependent Claim 12 also provides further clarification, requiring "mappable hypertext items [to be] processed and selectably represented on said computer …in order to cause additional information to be executed on said computer from sources, including memory **_and_** said service provider…" Col. 31-48-32:2 (emphasis added).

Just as Claim 11 does not require that the "additional of said situation information" be provided by "a service provider," such information need not be "new":

> Graphical display unit shows information including…device location and direction symbol **6a** which symbol can be a mappable hypertext item that the user may executably select in order to **receive additional information** or execute computer code associated with it as described in FIG. 12 below.

'956 Patent, Col. 12:27-31 (emphasis added).

— 19 —

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

> As the user's location…approaches within a selectable distance…proximate station banner 6d appears on display 4a … to call user's attention to, for example, a short-term offer of merchandise which, as mappable hypertext items, may be executably selected by user **to provide additional information** or execute as computer code as described in FIG. 12 below.

'956 Patent, Col. 13:33-37 (emphasis added).

> Graphical display unit 4b shows information including…device location and direction symbol **6***l*, north direction symbol **6***g*, service provider menu **6***h*, sub-menu **6***i*, which two menus are mappable hypertext items that the user may executably select in order **to receive additional information** or execute computer code associated with them as described in FIG. 12 below.

'956 Patent, Col. 14:65-15:7 (emphasis added). As shown above, the Patentee by no means meant to limit "provide additional of said situation information" to receiving "new information transmitted from the service provider," but instead broadly states that the user may "receive additional information." If the inventor meant to use the term "new" he would have done so. Instead, he deliberately chose to use the term "additional" and that intentional use of the term "additional" should not be rewritten to mean "new." *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004) ("[I]t is improper to read a limitation from the specification into the claims."); *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000) ("Although written description may aid in the proper construction of a claim term, limitations, examples, or embodiments appearing only there may not be read into the claim.").

Accordingly, the phrase "optionally executably selected by said user to provide additional of said situation information" should be construed as "displayed in a manner that permits the user to select the item so as to provide additional situation information about the item."

### 7. "item reference field," "name field," and "location field"

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| "item reference field" | No construction necessary. | A field that provides a code which determines the ordering of a particular element in a display of a table of similar such items or |

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| | | within a database of such information. |
| "name field" | No construction necessary. | A field that provides the item's name and, if applicable, the location or address, which may be a URL, of its additional information. |
| "location field" | No construction necessary. | A field that provides geographical location, in longitude and latitude or in reference to a given feature. |

The "searching" step of Claim 11 includes the related phrases "item reference field," "name field," and "location field." These plain and ordinary phrases are readily understandable by one of ordinary skill in the art and, therefore, do not require construction. As this Court has previously emphasized, "although every word used in a claim has meaning, not every word requires construction." *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005) (declining to construe claim terms); *see also Grape Technology Group, Inc. v. Jingle Networks, Inc.*, Civ. A. No. 08-408, slip op. at n. 2 (GMS) (D. Del. Jan. 25, 2010) (refusing to construe the term "generating a data field" and "reject[ing] [defendant's] construction because it attempts to read an example from the specification into the limitation").

Defendant's proposed construction impermissibly reads additional limitations into the well-understood claim terms. With respect to the phrase "item reference field," Defendant impermissibly bases its construction on a specific embodiment of the invention that refers to an "ordering of a particular element in a display of a table." *See* '956 Patent, Col. 22:1-10. Defendant's proposed construction similarly impermissibly reads additional limitations into the well-understood claim phrases "name field" and "location field." Defendant bases its construction of the terms "name field" and "location field" on a specific embodiment of the invention that refers to, respectively, the "mapped item's name" and the "item's geographical location, in longitude and latitude." *See* Col. 22:10-12 and Col. 22:12-15. Defendant's proposed constructions imply that

the Patentee acted as his own lexicographer. The exacting standard applicable, however, has not been met here.

"To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (quoting *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002)). Regarding what it means to "clearly set forth a definition," the Federal Circuit has clarified that, "[i]t is not enough for a patentee to **simply disclose a single embodiment** or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to **redefine the term**." *Thorner v. Sony*, 669 F.3d at 1365 (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc*., 527 F.3d 1379, 1381 (Fed.Cir.2008) (emphasis added). There is no redefinition of any of the "field" terms here.

**<u>"item reference field"</u>**

With respect to the phrase "item reference field," the plain language of "item reference field" indicates that the usage of "field" must be one that provides a reference to the "item" (*i.e.* the "mappable hypertext item"). *See* '956 Patent at Fig. 12, Col. 8:40-50 (discussing the term "fields" as serving a referencing function). This is supported by dictionary definition of the term "reference," which means "something that refers to something else" (Ex. 12, *Webster's Third New International Dictionary Unabridged* 1907 (2002)) or "something for which a name or designation stands; denotation" (Ex. 12, Random House Unabridged Dictionary 1620 (2nd ed. 1993)). The term "item" means an "element of a set of data." Ex. 12, *IBM Dictionary of Computing 360* (10th ed. 1993). Accordingly, the words in the phrase and the phrase itself are readily understandable to one of ordinary skill in the art and should stand as written. Although the phrase "item reference field" **could** be used as an ordering tool of elements, it is by no means limited to such usage.

**<u>"name field"</u>**

Regarding the term "name field," Defendant ignores usage of this term in the specification under "Summary of the Invention," which undermines its proposed construction. The Patentee states that certain features are identified by a code sequence containing "fields for the name, global

location, **_and if applicable_**, Universal Resource Locator (URL)." '956 Patent, Col. 8:43-45 (emphasis added). This listing of identifying features indicates that a field for the name and a URL are separate identifiers and neither a URL nor "the location or address" is part of the "name field." Defendant's construction also, as it uses the phrase "if applicable," confusingly suggests that the definition of "name field" is conditional on some unknown factor. A construction that incorporates this conditional element would not provide clarity to the term but instead allow the Defendant to pick and choose what the term means depending on what best suits its purpose. A result that invites future dispute should be avoided.

The plain language of "name field" indicates that this "field" provides a reference to the item's (_i.e._ the "mappable hypertext item") "name." _See_ '956 Patent at Fig. 12, Col. 8:40-50 ("Each feature is identified by a code or byte sequence containing fields for the name…"); '956 Patent, Col. 22:24-30 (discussing the term "name" as identifying an "item"). The term "name" is readily understood by a person of ordinary skill in the art and does not require construction.

### "location field"

Regarding the term "location field," Defendant's construction should be rejected for similar reasons. In the Summary of the Invention, the specification teaches that "location" information may encompass more than just geographical information, in longitude and latitude, as Defendant proposes. Specifically, the specification provides that location information may encompass "elements such as main roads and cities and the separation, i.e., mileages and transit time, between them with which their mobile device could compute their mileage and the estimated time before arriving." '956 Patent, Col. 8:51-55. The specification teaches, for example, that "[d]ata such as mileage to various municipalities, services, and attractions using a location-specific information sequence for fast transmission to mobile devices which display the mapped information, compute distances from the mobile device's current position, etc." '956 Patent, Col. 8:38-43. Although in some embodiments, the "location field" may include longitude and latitude information, the phrase "location information" should not be unnecessarily narrowed.

Alternatively, if the Court is inclined to construe these terms, they should be construed so that it is clear that the recitation of "a field" means "one or more fields," similar to "a data field" discussed above. The Federal Circuit in *Baldwin* has stated the general rule that claim language using the indefinite article "a" means "one or more." *Baldwin*, 512 F.3d at 1342. There is no basis for deviating from general rule applies here.

## C.      Disputed Claim Terms and Phrases Defendant Asserts Are Indefinite

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id*. at 2124. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id*. at 2130. The *Nautilus* "standard does not render all of the prior Federal Circuit and district court cases inapplicable, nor does it require that the claim language in this case be held indefinite." *Freeny v. Apple Inc.*, No. 2:13-CV-00361-WCB, 2014 WL 4294505, at *5 (E.D. Tex. Aug. 28, 2014). As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *Id*. at 2130 n.10. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc*., 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc*., 783 F.3d 1374, 1378, 1384 (Fed. Cir. 2015) (finding that "[t]he term 'spaced relationship' does not run afoul of 'the innovation-discouraging "zone of uncertainty" against which [the Supreme Court] has warned,' and to the contrary, informs a skilled artisan with reasonable certainty of the scope of the claim."). For terms of degree, "specific and unequivocal examples may be sufficient to provide a skilled artisan with clear notice of what is claimed." *DDR Holdings, LLC v. Hotels.com,*

*L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014) (finding that the phrase "look and feel" had an established, sufficiently objective meaning in the art). Likewise, when a subjective term is used in a claim, "the court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005); *accord Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (citing *Datamize*, 417 F.3d at 1351).

In this case, Claim 11 informs one of ordinary skill in the art with reasonable certainty of the scope of the claim.

### 1. "converting said coordinates to an appropriately proportionate representation"

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| "converting said coordinates to an appropriately proportionate representation" | "using the geographical coordinates associated with the item to determine the location of the display of a representation of the item, which has a size, quantity, or degree that is appropriate in relation to something else" | Indefinite |

Judge Gilstrap previously construed this phrase and found that its meaning is clear to one skilled in the art. *See* Ex. 3 at 38–42. Defendant's expert baldly asserts that various meanings could be assigned to the terms "proportionate" and "converting said coordinates," Ex. 9, Patterson Dec. at ¶¶ 27-31. Dr. Patterson fails to analyze any teaching from the specification and provides a conclusory opinion divorced from the intrinsic record. *See id.* Defendant's position of indefiniteness should be rejected.

Judge Gilstrap's previous construction was based on a thorough analysis of the teachings of the specification. However, the actual construction requires clarification because it does not capture the Court's findings that (1) the coordinates are used to determine the location of the display of a representation of the item and (2) that an "appropriately scaled representation of the

item" has a size, quantity, or degree that is appropriate in relation to something else. Accordingly, the construction of this phrase should be amended to "using the geographical coordinates associated with the item to determine the location of the display of a representation of the item, which has a size, quantity, or degree that is appropriate in relation to something else."

The phrase "converting said coordinates to an appropriately proportionate representation" is the second step of the method taught by Claim 11, which finds its antecedent bases in the first: "searching each of one or more unique mappable information code sequences, each of which said code sequences serving to uniquely represent one of said items…for a field containing geographical coordinates, said each of said code sequences includes…a location field including said geographical coordinates…" As known by those of skill in the art, "geographic coordinates" refer to the geographical coordinates contained in the location field of a mappable information code sequence and refer to a point on a map. Ex. 3 at 40. That point, however, is infinitesimal given the resolution of the geographic coordinates and is usually represented by text or a symbol so that the point is visible to a user. Thus, the claim requires converting the geographic coordinates to an appropriately proportionate representation of those coordinates by displaying a mappable hypertext item at the point associated with the geographic coordinates. The intrinsic record supports this analysis:

> A computer memory organized to include mappable hypertext code sequence 29 in FIG. 12 provides for rapid display of mappable information items, including map features, information sources, names, menus, and lists, certain of which may be executably selected by a user in order to display additional information related to any of such items, called a hypertext element, by receiving new information transmitted from the service provider. Additionally, code 29 *provides for graphically displaying on the user's display symbols and text appropriately relating to the items* and *in a manner which shows each item in a measurably appropriate relation to other such items of geographical features shown on the display* in an information sequence of data elements.
>
> …
>
> Element location 29c *provides the item's geographical location, in longitude and latitude or in reference to a given feature which the element location provides*.

'956 Patent, Col. 21:55–22:15 (emphasis added); Ex. 3 at 41.

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

As Judge Gilstrap found, the "coordinates are not the item, but instead are associated with an item to provide geographical location of the item." *Id.* at 39. Although Judge Gilstrap's previous construction is intended to encompass this concept, a jury may confuse the language of the construction to mean that the geographical coordinates are used to generate the representation of the item itself, which is contrary to Judge Gilstrap's findings and nonsensical. *Id.* at 42 (finding that the coordinates are not "converted into 'an appropriately scaled representation of the item' as Defendants contend").

With respect to the "appropriately proportionate representation" aspect of the disputed claim language, Judge Gilstrap found that "[o]ne of ordinary skill in the art would understand that the 'unique mappable information code sequences,' which includes the 'geographical coordinates' associated with an item, enable the code to determine 'a measurably appropriate relation to other such items of geographical features shown on the display.'" Ex. 3 at 42 (citing the '956 Patent, 21:65–67). The Court relied on the following teaching from the specification in making its finding:

> All the aforementioned *items are displayed* according to their geographic locations *in the scale of the area to be viewed on the display, which area to be viewed is selectable and may be zoomed in or out*, for example, along with the user's location symbol.

'956 Patent, Col. 22:51–55 (emphasis added); Ex. 3 at 42.

The Court's previous construction, however, does not provide clear guidance as to what an appropriately scaled representation of the item is. The Court's findings are clear, however, that the item's representation must be "appropriately scaled in size or detail (*i.e.*, 'appropriately proportionate.')." Ex. 3 at 41. The Court found that the term "'proportionate' indicates that the claimed representation should have a size, quantity, or degree that is scaled (*i.e.*, 'appropriate') in relation to something else." Ex. 3 at 40. Accordingly, LBSI proposes a construction that incorporates this finding.

Defendant's assertion that the phrase "proportionate" is based on a misunderstanding regarding the size of an item. *See* Ex. 9, Patterson Dec. at ¶ 30. As Mr. Denning has confirmed, one skilled in the art would know that in order to determine or specify the size of an item on a map

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

either at least two sets of geographical coordinates or one geographical coordinate given along with some other size parameter are required. Ex. 8, Denning Dec. at ¶ 40.

For these reasons, therefore, the Court should find that the phrase has a definite meaning and clarify its previous construction and construe the phrase "converting said coordinates to an appropriately proportionate representation" to mean "using the geographical coordinates associated with the item to determine the location of the display of a representation of the item, which has a size, quantity, or degree that is appropriate in relation to something else."

## 2.    Step (c) of Claim 11

| DISPUTED TERMS FOR CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| Step (c) of Claim 11: "displaying selectably scalably said items on said computer whereby said user may quickly receive and display timely situation information mapped in the context of spatial information, including appropriate to a geographical or other area, in which said mappable hypertext items are quickly received, mapped, and optionally executably selected by said user to provide additional of said situation information or received, stored, and transmitted by a provider of said situation information" | Displaying selectably scalably said items on said computer, whereby said user may, quickly, receive and display timely situation information mapped in the context of spatial information, including spatial information appropriate to a geographical or other area, and whereby said mappable hypertext items are, quickly, either:<br><br>(1) received, mapped, and optionally executably selected by said user to provide additional of said situation information; or<br><br>(2) received by a provider of said situation information, stored by a provider of said situation information, and transmitted by a provider of said situation information. | Indefinite. |

The Court has twice before construed the entire third step of Claim 11, judiciously providing a comprehensive construction of the entire step that incorporates the Court's

construction of the many disputed claim terms. Ex. 2 at 24–34; Ex. 3 at 45–46. Defendant's assertion of indefiniteness of this phrase appears to be based solely on its argument two phrases within the step are indefinite. *See* Ex. 9, Patterson Dec. at ¶¶ 34-43. Neither of these phrases (discussed below) are indefinite, and the Court's previous constructions should be adopted. *See* Ex. 8, Denning Dec. at ¶¶ 42-62.

Defendant begins its indefiniteness argument by asserting that the phrase "including appropriate to a geographical or other area" would not have been understood by one of ordinary skill in the art. *See* Ex. 9, Patterson Dec. at ¶ 34. Defendant baldly asserts that it is unclear what technical information the term adds to the precedent phrases "situation information" or "spatial information." *Id*. at ¶ 35. However, this Court has previously held, "including appropriate to a geographical or other area" modifies the phrase "spatial information." *See* Ex. 2 at 32. Thus, one of ordinary skill in the art would understand that the "spatial information" to be displayed in Step (c) would need to be appropriate to the geographical area of the user.

Defendant next argues that the phrase "quickly received, mapped, and optionally executably selected by said user…" would leave a person of ordinary skill in the art wondering what "quickly" means or what part of Step (c) is meant to be done so. *See* Ex. 9, Patterson Dec. at ¶ 39. Defendant states that the term could have different meanings – with varying degrees – of "quick" depending on which part of Step (c) it is applied to. *Id*. at ¶¶ 41-42.

Defendant's arguments are misplaced and have been previously rejected. The proper inquiry is "whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Morton International, Inc. v. Cardinal Chemical Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993). "A claim is not indefinite simply because it is hard to understand when viewed without the benefit of the specification." *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1369 (Fed. Cir. 2001). The term "quickly" modifies receiving of timely situation information and mappable hypertext items. '956 Patent, Col. 31:38 ("whereby said user may quickly receive and display timely situation information"); '956 Patent, Col. 31:41 ("in which said mappable hypertext items are quickly received"). The specification teaches that the speed at which information is

provided be based on the corresponding application of the invention. *See, e.g.*, '956 Patent, Col. 6:43-46 (as visitors approach their hotel, the system provides them a map display with "increasing detail, ultimately positioning them at the hotel's entrance"); '956 Patent, Col. 8:9-19 (traffic congestion and emergency-situation information is provided to drivers in real-time, allowing them to avoid traffic situations that lay in their path); *see also* '956 Patent, Cols. 6:35-38, 7:33-36, 9:20-22. Accordingly, as understood by one skilled in the art, the exact rate at which information is received will vary and is not relevant to understanding Step (c).

Judge Folsom previously found, "the use of 'quickly' must be read in the context discussed as to the term 'timely situation information'…regarding the user being able to take advantage of the information, such as while the user is still proximate to a relevant location or has not yet reached the location." *See* Ex. 2, *Aaron Bros.* Action, Dkt. 195 at 28; *see also id.* at 24-34; Ex. 3, *BP Action*, Dkt. 395 at 47-49. In so doing, and after a thorough analysis, Judge Folsom explicitly found that the term "quickly" and the entire Step (c) are not indefinite. This Court should find the same here.

## CONCLUSION

In view of the intrinsic and extrinsic record and for the foregoing reasons, Plaintiff respectfully requests that the Court adopt its proposed constructions as detailed above and to reject Defendant's proposals and claims of indefiniteness, which has not been shown by clear and convincing evidence.

**PLAINTIFF LBS INNOVATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

Dated: January 29, 2020    Respectfully submitted,

        **BUETHER JOE & CARPENTER, LLC**

      By: */s/ Niky R. Bagley*
        Christopher M. Joe
        State Bar No. 00787770
        Chris.Joe@BJCIPLaw.com
        Eric W. Buether
        State Bar No. 03316880
        Eric.Buether@BJCIPLaw.com
        Brian A. Carpenter
        State Bar No. 03840600
        Brian.Carpenter@BJCIPLaw.com
        Niky R. Bagley
        State Bar No. 24078287
        Niky.Bagley@BJCIPLaw.com
        Kenneth P. Kula
        State Bar No. 24004749
        Ken.Kula@BJCIPLaw.com
        Thomas J. Gohn
        State Bar No. 24097742
        TJ.Gohn@BJCIPLaw.com
        Michael C. Pomeroy
        State Bar No. 24098952
        Michael.Pomeroy@BJCIPLaw.com


        1700 Pacific Avenue, Suite 4750
        Dallas, Texas 75201
        Tel.: (214) 466-1278
        Fax: (214) 635-1831

        **ATTORNEYS FOR PLAINTIFF**
        **LBS INNOVATIONS, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been forwarded to all counsel of record via the Court's CM/ECF system on this 29th day of January, 2020.

*/s/ Niky R. Bagley*
Niky R. Bagley