# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| LBS INNOVATIONS, LLC, § <br> *Plaintiff*, § <br> v. § <br> APPLE INC., § <br> *Defendant*. § | Case No. 2:19-cv-00119-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is Defendant Apple Inc.'s Motion to Change Venue to the Northern District of California (Dkt. No. 29).[1] After analyzing the convenience factors, the Court concludes that Defendant has failed to show that the Northern District of California ("N.D. Cal.") is a clearly more convenient forum than the Eastern District of Texas ("E.D. Tex."). The Court therefore **DENIES** Defendant's Motion to Change Venue.

### I.  APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To determine whether venue transfer is appropriate under § 1404(a), the Fifth Circuit has adopted several private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The private interest factors include (1) the availability of compulsory process to secure the attendance of witnesses; (2) the cost of attendance for willing witnesses; (3) the relative ease of access to sources of proof; and (4) all other practical problems that make trial of a

---

[1] All citations to page numbers within this Order refer to the page numbers set forth within the original document rather than the page numbers provided by the CM/ECF system unless otherwise noted.

case easy, expeditious, and inexpensive. *Id*. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems with conflict of law. *Id*.

A plaintiff's choice of venue is not an express factor in the analysis. *Seven Networks, LLC v. Google LLC*, 2:17-CV-00442-JRG, 2018 WL 4026760, at *2 (citing *Volkswagen II*, 545 F.3d at 315). However, a moving defendant must demonstrate that the proposed venue is clearly more convenient that the original venue. *Id*. (citing *Volkswagen II*, 545 F.3d at 315). By applying this heightened standard, the plaintiff's choice of forum is given the appropriate deference. *Id*. (citing *Volkswagen II*, 545 F.3d at 315).

## II.     ANALYSIS

As an initial matter, the Court notes that this action could have been brought in the N.D. Cal.[2] Thus, the Court will proceed to analyze the convenience factors.

### a. Practical problems that make trial of a case easy, expeditious, and inexpensive

#### i. Parties' arguments

Defendant argues that this factor is neutral (Dkt. No. 29 at 12–13), and Plaintiff argues that this factor weighs in favor of retaining this case in E.D. Tex. (Dkt. No. 34 at 11–12). The '956 Patent, which is being asserted in this case, has previously been litigated in this Court, and Judge Gilstrap has presided over twenty-one cases involving the patent-in-suit. However, Defendant

---

[2] The Court assigns no weight to Plaintiff's arguments about the probability of success in the districts and the damages awards in the districts. *See* Dkt. No. 34 at 3–4. Plaintiff has not shown how these arguments fit into the standard convenience factors or cited to case law where such an argument was considered. These arguments are tangential to the critical issue—whether trial would be clearly more convenient in N.D. Cal. as compared to a trial in E.D. Tex.

argues that this factor is neutral and that this previous litigation within the District will not result in any increased efficiency if this case proceeds in E.D. Tex. Dkt. No. 29 at 12. Defendant argues that "[t]he vast majority of LBSI's previous cases ended in the initial stages," that "[n]one proceeded to trial," and that "in only two cases did the Court conduct a claim construction hearing or hold any merits hearings or proceedings at all." *Id*. Defendant also asserts that those two cases were completed several years ago. Claim Construction Order, Dkt. No. 395, *LBS Innovations v. BP America Inc*., Case No. 2:11-cv-00407-JRG (E.D. Tex. June 20, 2013); Claim Construction Order, Dkt. No. 195, *LBS Innovations LLC v. Aaron Bros., Inc*., Case No. 2:11-cv-00142-JRG (E.D. Tex. Feb. 14, 2012).

### ii. Discussion

This factor clearly weighs against transfer. Plaintiff has filed twenty-seven patent infringement actions in the Eastern District of Texas asserting the patent-in-suit, with some of those cases being filed as recently as December 29, 2017. Judge Gilstrap presided over twenty-one (21) of those cases. Judge Gilstrap had significant involvement in the *LBS Innovations v. BP America Inc*. case. *See* Case No. 2:11-cv-00407, Dkt. No. 395 (Claim Construction Order); Case No. 2:11-cv-00407, Dkt. No. 553 (a Motion for Summary Judgment granted by Judge Gilstrap). That case served as a lead case for a group of different cases involving more than 30 defendants. *See, e.g.,* Case No. 2:11-cv-00407, Dkt. Nos. 316 (Consolidation Order).[3] Judge Gilstrap was heavily involved in that case, issuing a fifty-page claim construction order (Case No. 2:11-cv-00407, Dkt. No. 395), ruling on summary judgment motions (Case No. 2:11-cv-00407, Dkt. No.

---

[3] The Complaints within the consolidated cases show that at least thirty-three defendants (and one plaintiff in a declaratory judgment action) were involved in the case. Case No. 2:11-cv-00407, Dkt. No. 215 (Amended Complaint); Case No. 2:11-cv-00409, Dkt. No. 1; Case No. 2:12-cv-00735, Dkt. No. 1; Case No. 2:12-cv-00759, Dkt. No. 1.

553), and conducting a pre-trial conference lasting at least two days. (Case No. 2:11-cv-00407, Dkt. Nos. 556 & 557). Furthermore, Judge Gilstrap presided over seventeen (17) other cases involving the present patent-in-suit. The lengthy experience of this Court with the patent-in-suit and the related technology demonstrates the judicial efficiency and consistency that would be gained by retaining jurisdiction over this matter.

Defendant cites the Federal Circuit's decision in *In re Verizon Business Network Services Inc.*, 635 F.3d 559 (Fed. Cir. 2011) ("*Verizon*"). However, that case is distinguishable from the present facts. In *Verizon*, the Federal Circuit stated that "[t]he principal question" before them was "whether the trial court could plausibly justify denying transfer to a far more convenient venue based solely on its previous handling of a lawsuit involving the same patent that settled more than five years before this suit was filed." *Id*. at 560. The Court ultimately found "the Eastern District's previous claim construction in a case that settled more than five years before the filing of this lawsuit to be too tenuous a reason to support denial of transfer." *Id*. at 562. In reaching this conclusion, the Federal Circuit concluded that "[t]he Eastern District of Texas would have to relearn a considerable amount based on the lapse in time between the two suits and would likely have to familiarize itself with reexamination materials that were not part of the record during the previous suit." *Id*. However, the *Verizon* court also quoted the Federal Circuit's *In re Vistaprint Ltd*. decision, which provided that:

> where, as here, the trial court performed a detailed analysis explaining that it is very familiar with the only asserted patent and the related technology, and where there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, we cannot say the trial court clearly abused its discretion in denying transfer.

628 F.3d 1342, 1347, n. 3 (Fed.Cir.2010)

This Court's previous experience with the patent-in-suit is more extensive than the limited previous experience noted in *Verizon*. The present action involves the same patent-in-suit and similar underlying technology as the *BP America* case. Furthermore, Judge Gilstrap has engaged in a detailed analysis within the *BP America* case—the *BP America* case alone was a lead consolidated case comprising at least thirty-four defendants, and Judge Gilstrap handled the case through at least two days of pre-trial hearings, conducted Markman proceedings and ruled on summary judgment motions. Judge Gilstrap also presided over seventeen (17) other cases asserting the patent-in-suit. Despite the passage of time, the size of the *BP America* case and the number of cases Judge Gilstrap has presided over involving the patent-in-suit establish that this factor weighs against transfer. Moreover, other factors also are present that weigh against transfer here, unlike the *Verizon* case.

Accordingly, this factor weighs strongly against transfer.

### b. The availability of compulsory process to secure the attendance of witnesses
#### i. Parties' arguments

Defendant argues that this factor is neutral (Dkt. No. 29 at 11), and Plaintiff argues that this factor weighs in favor of retaining this case in this district. (Dkt. No. 34 at 9–11). Defendant contends that "neither party has identified material non-party witnesses in either" district. Dkt. No. 29 at 11. Defendant also contends that there is no "reason to believe that any non-party witnesses would be within the subpoena power of this District" because "[t]he '956 Patent was not developed, prosecuted, or commercialized in Texas." *Id*.

Plaintiff identifies several individuals with discoverable information who would require a subpoena: Christian Perez, Shane Fagan, Rafael Santana, David Conner, Emma Stewart, and Chris

Slott. Dkt. No. 34 at 10. Plaintiff also argues that these third-party witnesses would be subject to subpoena power "pursuant to Fed. R. Civ. P. 45(c)(3)(C)." Dkt. No. 34 at 10..

### ii. Discussion

This factor is largely neutral. Defendant itself argues that this factor is neutral, and Plaintiff's arguments have not shown that this factor weighs significantly in favor of retaining this case in this district. Plaintiff attaches LinkedIn pages for certain Apple employees in attempt to show that these witnesses have relevant knowledge. The profiles show that:

- Christian Perez is a "Technical Expert" in the Dallas/Forth Worth area who educates customers "on how their devices can better their lives" that is "certified by Apple to do iPhone repairs . . ." (Dkt. No. 34-4);
- Shane Fagan is a "Mac/iOS device Specialist" based in Frisco, Texas (Dkt. No. 34-10);
- Rafael Santana is an "AppleCare AMR/ALAC" who formerly was a market recruiter and leader of support teams, and he is based in Frisco, Texas (Dkt. No. 34-9);
- David Connor is based in the Dallas/Fort Worth area and is shown to work in "Logistics – Global Network Operations" (Dkt. No. 34-8);
- Emma Stewart is an "AOS iPhone Order Admin" in the Austin, Texas Area (Dkt. No. 34-7); and
- Chris Slott is based in Austin, Texas and works as a support engineer (Dkt. No. 34-6).

While Plaintiff has shown that these witnesses likely have some relevant knowledge, that does not make them likely to testify at trial. Defendant represents that it has "provided sworn evidence that no employees at these former stores were involved in the design, development, implementation, or marketing of the accused Maps technology." Dkt. No. 35 at 1 (citing Dkt. No. 29-1 at ¶ 14). Defendant represents that no one in Texas has "worked on the design, development, or implementation of the accused maps technology" or "worked on the marketing or licensing of

this technology." *Id*. at 3 (citing Dkt. No. 29-1 at ¶¶ 8–10). Faced with these declarations, Plaintiff has not adequately explained how these witnesses would be likely to testify at trial.

Plaintiff states that it "has not interviewed the individuals" listed above, but Plaintiff states that it "has identified [them] as potentially having discoverable information." Dkt. No. 34 at 10. Plaintiff indicates that, within its Initial Disclosures, Plaintiff lists these individuals as individuals who "potentially have discoverable information" rather than "individual[s] likely to have discoverable information," but Plaintiff says that it may change that status at a later date. Dkt. No. 34 at 10 n.3. This representation that these individuals "potentially have discoverable information" weakens Plaintiff's arguments on this factor.

### c. The relative ease of access to sources of proof

The Court concludes that this factor weighs slightly in favor of transfer. Defendant presumably has more relevant documents in this action for patent infringement. *In Re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Plaintiff has not provided any reason why that presumption does not hold true in this case.

Defendant argues that this factor weighs in favor of transfer to N.D. Cal. (Dkt. No. 29 at 6–8), and Plaintiff argues that this factor weighs in favor of transfer to N.D. Cal, but only slightly (Dkt. No. 34 at 5–7). Defendant identifies different documents and other sources of proof that would be more conveniently transported to N.D. Cal. than E.D. Tex. Defendant argues that the "design, development, and implementation" of the accused features of Defendant's products took place in Cupertino, California, that the "design and engineering documents relating to the location-based search features of Apple Maps are stored in or near" Cupertino, California. Dkt. No. 29 at 6 (citing Dkt. No. 29-1 at ¶¶ 8, 9). Defendant also argues that its source code for the accused features of Defendant's products and Defendant's marketing and sales documents are all located in N.D.

Cal. *Id*. (citing Dkt. No. 29-1 at ¶¶ 8, 10). By contrast, Plaintiff contends that it is a Texas company and that there are sources of proof for infringement that would be more easily obtained in Texas (*id*.).

However, the impact of this factor is weaker for multiple reasons. While Defendant argues that none of its relevant documents were located in Texas as of the date that this lawsuit was filed, Plaintiff argues that Apple's Austin facilities likely have relevant documents and that the Apple stores were open in Plano and Frisco on the date that this lawsuit was filed. *Id*. The presence of these stores suggests that Defendant likely possessed relevant documents in this district as of the date that the complaint was filed, and other stores in Austin and in the Dallas area suggests that some relevant documents are still located in Texas. Furthermore, Plaintiff argues that Apple is hiring people in Texas and "ramping up its Apple Maps segment in Texas." Dkt. No. 34 at 6 (citing Dkt. No. 34-5 at 2 (using ECF page number)). These locations suggest that Defendant still possesses relevant documents in Texas.

Technology has clearly lessened the inconvenience of gaining access to many sources of proof. *Volkswagen II*, 545 F.3d at 316. However, that fact "does not render this factor superfluous." *Id*. While the Fifth Circuit has provided authority on the factors that should be considered, "that authority does not preclude this Court from diminishing the importance of this factor in the overall transfer analysis, especially where, as is the case here, the movant has identified no sources of proof that cannot be transferred electronically." *Stingray Music USA, Inc. v. Music Choice*, No. 2:16-CV-964-JRG-RSP, 2017 WL 1022741, at *3 (E.D. Tex. Mar. 16, 2017). While Defendant states that source code is located in N.D. Cal, Defendant has not indicated that its other documents could not be transported electronically, limiting the importance of these documents under this factor.

Even though these factors limit the weight that this factor is entitled to, the Court still concludes that this factor weighs slightly in favor of transfer.

### d. The cost of attendance for willing witnesses

#### i. Parties' Arguments

Defendant argues that this factor weighs in favor of transfer to N.D. Cal. (Dkt. No. 29 at 8–10), and Plaintiff argues that this factor weighs slightly in favor of retaining this case in E.D. Tex. (Dkt. No. 34 at 7–9).

Defendant argues that it has several party witnesses with relevant knowledge for which trial would be more convenient in N.D. Cal. Dkt. No. 29 at 8. Defendant points to Matt Ball, Allen Denison, Michael Jaynes, and other employees of Defendant who have knowledge about licensing of Defendant's licensing of intellectual property. *Id.* at 8–9. Defendant argues that each of these individuals are located in N.D. Cal. *Id.* at 9. Defendant therefore argues that a trial in N.D. Cal. would be more convenient for these witnesses than a trial in this district. *Id.*

For witnesses identified by Plaintiff, Defendant argues that trial would be more convenient in N.D. Cal. for Dennis Hollenberg (co-owner of LBSI and inventor of patents) and that N.D. Cal. would be roughly equal in convenience for Daniel Mitry and Timothy Salmon (the co-owners of LBSI). *Id.* at 10. Defendant argues that Hollenberg lives in Eugene, Oregon and that Mitry and Salmon are located in New Jersey and in New York respectively, and Defendant argues that the travel time for these individuals would be roughly the same to reach either forum. *Id.*

Plaintiff argues that, for Mr. Mitry and Mr. Salmon, trial would be more convenient in E.D. Tex. than in N.D. Cal. as those two individuals reside in New Jersey and New York respectively. Dkt. No. 34 at 8. Plaintiff argues that the cost of travel for Mitry and Salmon would be greater if a trial was conducted in N.D. Cal, suggesting that trial would be more convenient in E.D. Tex. *Id.*

Plaintiff argues it "has identified other individuals who may have knowledge of facts relevant to the technology covered by the patent-in-suit who reside or work in the Plano, Frisco, Dallas, or Austin area." *Id.* at 9. Plaintiff points to Christian Perez and Shane Fagan as potential witnesses. *Id.*

### ii. Discussion

The Court concludes that this factor is largely neutral. The witnesses identified by Defendant are all party witnesses, and this limits their impact to this factor. This factor largely concerns the convenience to willing, non-party witnesses. *Seven*, 2018 WL 4026760, at *10 (citing *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, Civil Action No. 3:10-CV-2466-D, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (further citations omitted)). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, Case No. 2:16-CV-0134-JRG-RSP, 2017 WL 750290, at *5 (E.D. Tex. Feb. 27, 2017). Thus, these party witnesses should be considered, but they are entitled to lesser weight than non-party witnesses.

Plaintiff argues that trial would be more costly for Mitry and Salmon in N.D. Cal., and this is entitled to some weight. Mitry and Salmon reside in New Jersey and New York, suggesting that a flight for these individuals would be longer and more expensive to N.D. Cal. than E.D. Tex. *See* Dkt. No. 29-16 at 16–22. Trial in N.D. Cal would appear less inconvenient for the inventor, Mr. Hollenberg. Additionally, Defendant has identified three specific witnesses for whom trial would be significantly more convenient in N.D. Cal, and Defendant points to "Apple employees" who are knowledgeable about licensing of intellectual property.

Given the very limited showing regarding witnesses, and the fact that both venues hold advantages for one side's witnesses, this factor is largely neutral.

### e. The administrative difficulties flowing from court congestion

Pursuant to Federal Circuit precedent, the relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved. . . ." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009); *accord Seven*, 2018 WL 4026760, at *14. Thus, this factor commonly turns on case statistics showing the time-to-trial in the competing venues.

Defendant argues that this factor is neutral (Dkt. No. 29 at 13–14), and Plaintiff argues that this factor weighs in favor of retaining the case in E.D. Tex. (Dkt. No. 34 at 14–15). Defendant contends that only a small difference exists in the amount of time to trial between E.D. Tex. and N.D. Cal. Dkt. No. 29 at 14. To support this assertion, Defendant does not cite to the current time to trial; it instead cites to a 2015 ruling in which this Court stated that "[t]he Eastern District of Texas and Northern District of California have similar times to trial." *Id*. (citing *Gonzalez v. Tagged, Inc.,* No. 2:14-cv-00906-JRG-RSP, 2015 WL 5578367, *4 (E.D. Tex. Sep. 22, 2015)). Plaintiff cites to current trial statistics, indicating that the median time-to-trial for civil cases in the 12-month period ending on June 30, 2019 was 25.3 months in N.D. Cal and 17.5 months in E.D. Tex. Dkt. No. 34 at 12–13 (citing Dkt. No. 34-13).

This factor weighs against transfer. A 2015 statement that the two districts have similar times to trial has little probative value in determining the time-to-trial when this case was filed in 2019. By contrast, Plaintiff provides the time-to-trial statistics, which show that the time-to-trial is 7.8 months shorter in this district. This number covers all civil cases, and it would likely be an even greater difference if the time-to-trial were narrowed to focus on patent cases. The percentage of intellectual property cases within the total number of civil cases is much higher in this Court as

compared to N.D. Cal. 17.13% (523 out of 3,053 civil cases) of the civil cases filed in E.D. Tex. were considered to be "Copyright, Patent, and Trademark" cases. Dkt. No. 34-13 at 3. The same number for N.D. Cal was 9.11% (697 out of 7,649 civil cases). Id. at 2 (using ECF page number). Patent cases tend to be longer than other civil cases. Thus, it follows that, if the time-to-trial were narrowed to focus on patent cases, the time-to-trial statistics would weigh even more strongly against transfer. For these reasons, this factor weighs against transfer.

### f.  The local interest in having localized interests decided at home

Defendant argues that this factor weighs in favor of transfer to N.D. Cal. (Dkt. No. 29 at 13–14), but Plaintiff argues that this factor is neutral (Dkt. No. 34 at 14). N.D. Cal has a local interest in this case as Defendant argues that it is based in N.D. Cal. and that the accused products are developed in N.D. Cal.

Plaintiff argues that acts of infringement have occurred in Texas, and Plaintiff also argues that it is a Texas corporation. Dkt. No. 34 at 14. However, the Court concludes that this factor weighs slightly in favor of transfer to N.D. Cal. "Interests that 'could apply virtually to any judicial district or division in the United States,' such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests." *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (citing *Volkswagen II*, 545 F.3d at 318). While Defendant possessed stores in E.D. Tex. on the date that this case was filed, the accused products are sold nationwide.

### g.  The familiarity of the forum with the law that will govern the case

Neither party raises any argument that this factor weighs for or against transfer. *See* Dkt. No. 29 at 15; Dkt. No. 34 at 14. Accordingly, the Court finds that this factor is neutral here.

### h. The avoidance of unnecessary problems with conflicts of law

Neither party raises any argument that this factor weighs for or against transfer. *See* Dkt. No. 29 at 15; Dkt. No. 34 at 15. Accordingly, the Court finds that this factor is neutral here.

### i. Weighing the factors together

Having considered all the factors, the Court determines that most are fairly neutral, some weigh in favor of transfer, but not heavily, and some weigh against transfer, one heavily. Accordingly, the movant has not carried the burden of showing that the Northern District of California is a clearly more convenient venue.

## III. CONCLUSION

The Court concludes that transfer is not appropriate and therefore **DENIES** Defendant's Motion to Change Venue (Dkt. No. 29). The Court also **DENIES** Defendant's Motion for Hearing (Dkt. No. 48). The resolution of the Motion to Change Venue also moots Defendant's request to stay the case pending resolution of the Motion to Change Venue, so the Motion to Stay (Dkt. No. 57) is **DENIED AS MOOT**.

**SIGNED this 26th day of February, 2020.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE