**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LBS INNOVATIONS, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:19-cv-00119-JRG-RSP |
| APPLE INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**CLAIM CONSTRUCTION
MEMORANDUM OPINION AND ORDER**

Before the Court is the opening claim construction brief of Plaintiff LBS Innovations, LLC

("Plaintiff") (Dkt. No. 54, filed on January 29, 2020), the response of Defendant Apple Inc. ("De-

fendant") (Dkt. No. 56, filed on February 12, 2020), and the reply of Plaintiff (Dkt. No. 58, filed

on February 19, 2020). The Court held a claim construction hearing on March 11, 2020 (*see* Dkt.

No. 69). Having considered the arguments and evidence presented by the parties at the hearing and

in their claim construction briefing, the Court issues this Claim Construction Order. *See Phillips*

*v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*); *see also Teva Pharm. USA, Inc.*

*v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## TABLE OF CONTENTS

**I. BACKGROUND** .................................................................................................... **3**

**II. LEGAL PRINCIPLES** ......................................................................................... **6**

**III. CONSTRUCTION OF AGREED TERMS** ..................................................... **11**

**IV. CONSTRUCTION OF DISPUTED TERMS** ................................................. **11**

   A.  The Preamble ................................................................................................. 11

   B.  "mappable hypertext items"........................................................................... 17

   C.  "selectably scalably".................................................................................... 20

   D.  "a data field" ................................................................................................ 24

   E.  "item reference field," "name field," "location field" ...................................... 30

   F.  "displaying" ................................................................................................ 36

   G.  "optionally executably selected by said user to provide additional of said situation information"............................................................................................... 39

   H.  "converting said coordinates to an appropriately proportionate representation" ............... 43

   I.  Step (c) of claim 11 – "displaying selectably scalably said items …" ................................ 50

**V. CONCLUSION** .................................................................................................. **59**

# I. BACKGROUND

Plaintiff brings suit alleging infringement of United States Patent No. 6,091,956 ("the '956 patent") entitled "Situation Information System." The application for the '956 patent was filed on June 12, 1997, and the '956 patent eventually issued on July 18, 2000.

The '956 Patent generally describes a "wireless system for providing services and time critical information about places and events to mobile computers and their users proximate to their locations or potential destinations . . . ." '956 patent, Abstract. The specification states that "[i]nformation about places and their events, situation information, helps people to function closer to their potential" and that "[s]uch information resides available, but largely inaccessible because it lies unindexed and distributed in a plethora of largely local repositories." *Id.* at col. 2, ll. 57–61. Thus, according to the specification, the invention increases "the availability, accessibility, and timeliness of [information that specifically fits a person's needs], about specific places, events, and their details, called situations." *Id.* at col. 1, ll. 35–38.

In one embodiment, "the situation information system provides users with up-to-date map-tracking information relating their location to events and situations as well as enabling them to respond in a timely manner." *Id.* at col. 4, ll. 48–51. A user may choose to respond to such information "by visiting one or more of the events, avoiding them entirely, communicating them to another person, rectifying them, or otherwise modifying plans and itineraries in light of such events." *Id.* at col. 4, ll. 42–46. The specification additionally discloses that the system may provide a user with "mappable information items, including map features … which may be executably selected by a user to display additional information … by receiving new information transmitted from the service provider." *Id.* at col. 21, ll. 55–62.

Plaintiff previously asserted claim 11 of the '956 patent in the case of *LBS Innovations LLC v Aaron Brothers, Inc., et al.*, No. 2:11-CV-00142 ("*Aaron Brothers*"). In *Aaron Brothers*, Judge Folsom construed the following terms/phrases at issue in this case: (1) the preamble's phrase of "including making apparent to the aural and tactile senses of the user"; (2) "a computer" and "said computer"; (3) "mappable hypertext items"; (4) "timely situation information"; (5) "displaying"; (6) "optionally executably selected by said user to provide additional of said situation information"; and (7) the "displaying . . ." step (element "c" in claim 11). *See Aaron Brothers*, Dkt. No. 195. Judge Folsom's claim construction order is attached to Plaintiff's opening brief as Exhibit 2 (Dkt. No. 54-2), and is hereinafter referred to as the *Aaron Brothers* Order.

In addition, Plaintiff previously asserted claim 11 of the '956 patent in the case of *LBS Innovations LLC v BP America, Inc., et al.*, No. 2:11-CV-00407 and *LBS Innovations LLC v Alfred Angelo, Inc., et al.*, No. 2:11-CV-00735 (collectively, "*BP America*"). In *BP America*, Judge Gilstrap construed the following terms/phrases at issue in this case: (1) "timely situation information"; (2) "a computer" and "said computer"; (3) "data field"; (4) the preamble's phrase of "making apparent to the aural and tactile senses of the user"; (5) "converting said coordinates to an appropriately proportionate representation"; (6) "displaying"; (7) the "displaying . . ." step (element "c" in claim 11); and (8) "whereby said user may quickly receive and display timely situation information" (within element "c" in claim 11). *See BP America*, Dkt. No. 395. Judge Gilstrap's claim construction order is attached to Plaintiff's opening brief as Exhibit 3 (Dkt. No. 54-3), and is hereinafter referred to as the *BP America* Order.

In this case, Defendant Apple filed a motion to strike (Dkt. No. 60) Plaintiff's expert declaration submitted in Plaintiff's claim construction briefing (Exh. 8, Dkt. No. 54-8) and four exhibits attached to Plaintiff's claim construction briefing (Exhs. 4–7, which are Dkt. Nos. 54-4, 54-

5, 54-6, and 54-7) that were briefs submitted in prior cases and incorporated by reference in Plaintiff's current briefing. On March 24, 2020, the Court granted the motion to strike in part; specifically, the Court ordered that exhibits 4, 5, 6, 7, and 8 are stricken from Plaintiff's Opening Claim Construction Briefing. *See, e.g.*, Dkt. No. 76.

The Abstract of the '956 patent is reproduced below:

> A wireless system for providing services and time-critical information about places and events to mobile computers and their users proximate to their current locations or potential destinations within enclosed areas, urban landscapes, and open areas, including travel distances and transit times, entertainment, merchants' messages, area attractions, communications, current locations of system users, and traffic congestion information and user-generated information from bar-coded objects and digital photographs of scenes and other materials. Included is a combination low-radiation dosage-reception handset for wireless communications which includes bar-code reader and digital camera peripheral devices for mobile computers, a bracket for interfacing a mobile computer with radio to external systems, and methods for improving the operations of computer reception, search, and display of such information for the edification, efficiency, and enjoyment of computer users.

The only asserted claim in this lawsuit is independent claim 11 of the '956 patent, which is reproduced below:

> **11**. A method of communicatively executing, including making apparent to the aural and tactile senses of the user, one or more transmittable mappable hypertext items representing people, organisms, and objects, including buildings, roads, vehicles, and signs, on a computer in a manner scalably representing interrelationships of said objects, comprising the steps of:
>
> a. searching each of one or more unique mappable information code sequences, each of which said code sequences serving to uniquely represent one of said items and copied from the memory of said computer or received from an alternate source, for a field containing geographical coordinates, said each of said code sequences includes an item reference field, a name field, a location field including said geographical coordinates, and a data field,
>
> b. converting said coordinates to an appropriately proportionate representation on said computer, and

     c. displaying selectably scalably said items on said computer whereby said user may quickly receive and display timely situation information mapped in the context of spatial information, including appropriate to a geographical or other area, in which said mappable hypertext items are quickly received, mapped, and optionally executably selected by said user to provide additional of said situation information or received, stored, and transmitted by a provider of said situation information.

## II. LEGAL PRINCIPLES

### A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' " *Phillips*, 415 F.3d 1303 at 1312 (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court first examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims themselves, the specification and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004). The general rule — subject to certain specific exceptions discussed *infra* — is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *see also Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

"The claim construction inquiry. . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.' " *Apple Inc. v.*

*Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.' " *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' " *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

"Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988));

*see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification — even if it is the only embodiment — into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence is useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862) (internal quotation marks omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not useful. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

### B.  Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). "The standards for finding lexicography or disavowal are 'exacting.' " *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### C.  Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

"When a 'word of degree' is used, the court must determine whether the patent provides 'some standard for measuring that degree.' " *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015). " 'Reasonable certainty' does not require 'absolute or mathematical precision.' " *BASF*, 875 F.3d at 1365, quoting *Biosig*, 783 F.3d at 1381. Likewise, when a subjective term is used in a claim, the "court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005). The standard "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

## III. CONSTRUCTION OF AGREED TERMS

Before the *Markman* hearing, the parties have agreed to the following meanings for the following terms. *See, e.g.*, Dkt. No. 62 (Joint Claim Construction Chart.)

| TERM | AGREED CONSTRUCTION |
|---|---|
| "a computer / said computer" | "the same computer that performs the other steps recited in the claim" |
| "timely situation information" | "up-to-date information about an event, or a condition, occurring or about to occur at a place" |

Accordingly, the Court adopts the constructions agreed to by the parties as listed above.

## IV. CONSTRUCTION OF DISPUTED TERMS

The parties' positions and the Court's analysis as to the disputed terms within claim 11 of the '956 patent are presented below.

### A.  The Preamble

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| The preamble is not a limitation as previously determined by the Court. | The preamble acts as a limitation on the claim. |

### (1) The Parties' Positions

Plaintiff contends that the preamble is not a limitation but for certain terms that provide antecedent basis for the body of the claim. *See, e.g.*, Dkt. No. 54, Plaintiff's Opening Claim Construction Brief, at 8. In particular, Plaintiff admits that the terms "items" and "a computer" and "one or more transmittable mappable hypertext items" are limitations because they provide antecedent basis for subsequent limitations in the claim. *Id.* In general, Plaintiff argues that, as a whole, the preamble is not a limitation because the patentee did not rely on the preamble during prosecution to define the invention or overcome prior art, that it is not necessary to give life, meaning, or

vitality to the claims, and that the preamble could be deleted without materially affecting the claim as a whole. *Id.* at 9–10. Plaintiff further argues that Judge Folsom and Judge Gilstrap already resolved this issue in finding that the preamble is not a limitation, and Plaintiff also argues that such a ruling should be reaffirmed here. *Id.* at 11–12.

Defendant contends that all of the preamble is limiting as opposed to only some or selected portions of the preamble. *See, e.g.*, Dkt. No. 56, Defendant's Responsive Claim Construction Brief, at 2. In particular, Defendant argues that five different parts of the preamble provide antecedent basis for later references in the body of claims 11 and 12, such antecedent bases make up the majority of the preamble and are intertwined with the rest of the preamble and cannot be grammatically or logically separated from the non-limiting portions, and such antecedent bases are necessary to define a structurally complete invention and provide greater detail about the later claimed elements. *Id.* at 2–9.

In its Reply, Plaintiff argues that just because certain terms in the preamble provide antecedent basis for the body of the claim, that does not make the preamble in its entirety a limitation. *See, e.g.*, Dkt. No. 58, Plaintiff's Reply Claim Construction Brief, at 1–2. Plaintiff admits that the terms "said items," "said computer," and "said user" in the preamble provide antecedent basis for claim 11. *Id.* Plaintiff focuses its arguments on the phrase "including making apparent to the aural and tactile senses of the user" and argues that such a phrase is not relevant or necessary to the body of the claim and merely recites a purpose or intended use of the invention. *Id.* at 3. Plaintiff further argues that Defendant does not provide any solid reason as to why the prior rulings by Judge Folsom and Judge Gilstrap should be disregarded. *Id.* at 2–3.

## (2) Analysis

The parties dispute whether the preamble is a limitation as a whole or whether only certain limitations with the preamble are limitations because they provide antecedent basis to the body of the claim.

The Federal Circuit has stated that there is no "litmus test [that] defines when a preamble limits claim scope." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). In general, the "preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim, [but] is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Id.* (citation and internal quotation marks omitted). In other words, whether to treat a preamble as a claim limitation must be "determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003).

"Preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006). "However, when limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015) (quoting *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003)). This is because "dependence on a particular disputed preamble phrase for antecedent basis . . . indicates a reliance on both the preamble and claim body to define the claimed invention." *Catalina*, 289 F.3d at 808. However, that a "phrase in the preamble . . . provides a necessary structure for [the] claim [] does not necessarily convert the entire preamble into a limitation, particularly one that only

states the intended use of the invention." *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015).

The preamble of claim 11 is reproduced below:

> A method of communicatively executing, including making apparent to the aural and tactile senses of the user, one or more transmittable mappable hypertext items representing people, organisms, and objects, including buildings, roads, vehicles, and signs, on a computer in a manner scalably representing interrelationships of said objects, comprising the steps of:

Plaintiff admits that the terms "the user," "a computer," and "one or more transmittable mappable hypertext items" are limitations, but Plaintiff disputes that the rest of the language is a limitation. Defendant argues that the entire preamble is limiting for three reasons: (1) the majority of the preamble's language provides antecedent basis for later elements; (2) the preamble cannot be grammatically or logically parsed into portions that provide antecedent basis and those that do not; and (3) the preamble provides necessary context and structure for the claims. *See, e.g.*, Dkt. No. 56 at 3–4.

The Court finds that the phrases "the user," "a computer," and "one or more transmittable mappable hypertext items" are limitations in the preamble because they provide antecedent basis for the body of the claim. This is not disputed by the parties. The Court finds that the phrase "representing people, organisms, and objects, including buildings, roads, vehicles, and signs" is a further limitation on the "mappable hypertext items" limitation. The Court is not persuaded by Plaintiff's argument that the phrase "one or more transmittable mappable hypertext items" can be a limitation while the further defining and related phrase of "representing people, organisms, and objects, including buildings, roads, vehicles, and signs" is not a limitation. These phrases are intertwined and dependent upon each other. Further, dependent claim 12 (which is not asserted),

14

claims "said objects," which is a clear reference to the "objects" term in the preamble. Further, the preamble includes the phrase "on a computer in a manner scalably representing interrelationships of said objects," which provides antecedent basis for the phrase "said interrelationships of said objects" in dependent claim 12. The Court rejects Plaintiff's arguments that because these additional preamble limitations do not provide antecedent basis in asserted independent claim 11 as opposed to un-asserted dependent claim 12, that they are not limitations in the preamble. *See Pacing Techs*, 778 F.3d at 1024 (finding the preamble limiting based in part on the limitation in question providing antecedent basis in a dependent claim and not the independent claim).

Overall, much of the arguments and focus by the parties is related to the preamble phrase "including making apparent to the aural and tactile senses of the user." The preamble phrase of "making apparent to the aural and tactile senses of the user" has been disputed and ruled upon in two prior instances. In the *Aaron Brothers* case, Judge Folsom ruled that the preamble language "making apparent to the aural and tactile senses of the user" is not a limitation but merely a statement of purpose or intended use for the invention. *See Aaron Brothers* Order at 6–10. In that ruling, Judge Folsom made the following findings:

> On its face, to "make[]" something "apparent" to the user is "a purpose or intended use for the invention." *Catalina Mktg.*, 289 F.3d at 808. In other words, it is set forth as an intended result, not as a step of the claimed method. This result is not "necessary to give life, meaning, and vitality" to the claim because the steps of the method can be performed without successfully making anything "apparent" to the user. *Id.*
>
> * * *
>
> Finally, Defendants have not shown that the term at issue was the subject of any discussion by the Examiner or the patentee during prosecution. The mention of the term at issue together with other limitations of the claim in the Notice of Allowability is not enough to rebut the general principle that the preamble is not a limitation.

* * *

> The Court therefore finds that "including making apparent to the au-
> ral and tactile senses of the user" is not a limitation of Claim 11.

*Aaron Brothers* Order at 9–10. Likewise, in the *BP America* case, Judge Gilstrap ruled that the

preamble language "making apparent to the aural and tactile senses of the user" is not a limitation

based on the claim language, the specification, and the prosecution history. *See BP America* Order

at 33–35

    The Court agrees with the analysis and conclusions by Judge Folsom and Judge Gilstrap

relating to the "making apparent to the aural and tactile senses of the user phrase." On its face, to

"make []" something "apparent" to the user is "a purpose or intended use for the invention." *Cat-*

*alina Mktg.*, 289 F.3d at 808. In other words, this portion of the preamble is set forth as an intended

result, not as a step of the claimed method. This phrase does not provide antecedent basis to any-

thing in the body of the claim. This result is not "necessary to give life, meaning, and vitality" to

the claim because the steps of the method can be performed without successfully making anything

"apparent" to the user. The specification and prosecution history does not require such a result,

nor does Defendant provide any clear and unmistakable disclaimer of claim scope. On balance,

this phrase is not a limitation. Further, the Court notes that such a finding is consistent with the

findings made by Judge Folsom and Judge Gilstrap in the *Aaron Brothers* case and the *BP America*

case.

    Instead of arguing that this particular phrase is by itself necessarily limiting, Defendant

effectively argues that everything else in the preamble is a limitation and thus by default this phrase

should also be a limitation because it cannot be separated from the rest of the preamble. The Court

disagrees. The phrase "including making apparent to the aural and tactile senses of the user" is a

distinct phrase which can be separated grammatically and logically from other phrases in the rest

16

of the preamble. The phrase in dispute is not "intertwined" with the rest of the language of the preamble. Instead, the phrase provides an example of "[a] method of communicatively executing," which Defendant appears to concede is a non-limiting statement of intended use.

The Court hereby construes the Preamble to be limiting except for the phrase of "[a] method of communicatively executing, including making apparent to the aural and tactile senses of the user."

### B. "mappable hypertext items"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "text or one or more symbols, displayable on a map, that can be selected to access additional information" | "text or one or more symbols, displayable on a map, that can be selected" |

### (1) The Parties' Positions

Plaintiff contends that its construction is best aligned with the intrinsic evidence and should be adopted. *See, e.g.*, Dkt. No. 54, Plaintiff's Opening Claim Construction Brief, at 12. In particular, Plaintiff argues that the phrase "to access additional information" is supported by the claims, the specification, and extrinsic dictionary definitions of the term "hypertext." *Id.* at 12–13.

Defendant argues the claims and specification allow but do not require the "to access additional information" limitation. *See, e.g.*, Dkt. No. 56, Defendant's Responsive Claim Construction Brief, at 9–10. Defendant argues that because the claim language indicates that a "data field may indicate that a hypertext item cannot be selected to provide additional information, it is improper to define a mappable hypertext item as necessarily selectable to obtain additional information." *Id.* at 10.

In its Reply, Plaintiff argues that the claim language supports Plaintiff's construction and is contrary to Defendant's construction. *See, e.g.*, Dkt. No. 58, Plaintiff's Reply Claim Construction Brief, at 3–4.

### (2) Analysis

Both of the parties propose a construction for the "mappable hypertext items" term. The parties' constructions are largely in agreement. The parties' dispute is limited to whether the phrase "to access additional information" is necessary. In the *Aaron Brothers* case, the prior parties agreed at the claim construction hearing that the term "mappable hypertext items" be construed to mean "text or one or more symbols, displayable on a map, that can be selected to access additional information." *See Aaron Brothers* Order at 14. Likewise, in the *BP America* case, the prior parties agreed that the term "mappable hypertext items" be construed to mean "text or one or more symbols, displayable on a map, that can be selected to access additional information." *See BP America* Order at 11. Plaintiff's proposed construction is the same as previously agreed to by the prior parties. For the reasons detailed below, this Court finds that Plaintiff's proposed construction is appropriate for this term.

Claim 11 recites "searching each of one or more unique mappable information code sequences, each of which said code sequences serving to uniquely represent one of said items and copied from the memory of said computer or received from an alternate source, for a field containing geographical coordinates . . . ." The parties do not dispute that "said items" refers back to the initial antecedent phrase of "mappable hypertext items" in the preamble. The claim further requires "displaying selectably scalably said [mappable hypertext items]" that can be "optionally

executably selected by [the] user." Thus, the express claim language requires the "mappable hypertext item" to be displayable and also requires that a user must be able to select a displayed mappable hypertext item to display additional information.

The specification teaches that the mappable hypertext items can be selected to access additional information:

> A computer memory organized to include mappable hypertext code sequence 29 in FIG. 12 provides for rapid display of mappable information items, including map features, information sources, names, menus, and lists, certain of which may be executably selected by a user in order to display additional information related to any of such items, called a hypertext element, by receiving new information transmitted from the service provider.

'956 patent, col. 21, ll. 55–62. The specification also discloses an embodiment that, in relation to FIG. 2, symbol 6a "can be a mappable hypertext item that the user may executably select in order to receive additional information or execute computer code associated with it as described in FIG. 12 below." *Id.* at col. 12, ll. 27–30. The specification also discloses multiple examples of where a mappable hypertext item "may be executably selected by user to provide additional information or execute computer code as described in FIG. 12 below." *Id.* at col. 13, ll. 34–37; *see also* col. 15, ll. 4–6.

On balance, the Court rejects Defendant's arguments on this term. The court finds that the intrinsic record is clear that the hypertext item must provide access to additional information. This is further confirmed by extrinsic evidence cited by Plaintiff that supports its construction. Random House Unabridged Dictionary at 942 (2nd ed. 1993) (stating that "hypertext" means "a method of storing data through a computer program that allows a user to create and link fields of information at will and to retrieve the data nonsequentially"); IBM Dictionary of Computing at 321 (10th ed. 1993) (stating that "hypertext" means "[a] way of presenting information online with connections

between one piece of information and another, called hypertext links"). The fact that a user may not actually select a hypertext item does not mean that the hypertext item itself does not access additional information when selected. Further, the Court notes that this ruling is consistent with agreed constructions by prior parties in the *Aaron Brothers* case and the *BP America* case.

The Court hereby construes the term "**mappable hypertext items**" to mean "**text or one or more symbols, displayable on a map, that can be selected to access additional information.**"

### C. "selectably scalably"

| Plaintiff's<br>Proposed Construction | Defendant's<br>Proposed Construction |
|---|---|
| "capable of being chosen for adjustment in size or detail" | <u>Scalably</u>: "in the scale of the area to be viewed on the display." The term "selectably" requires no construction.<br><br>Alternatively, "<u>selectably scalably</u>": in the scale of the area to be viewed on the display, which area to be viewed is selectable. |

### (1) The Parties' Positions

Plaintiff argues that its construction is supported by and is more consistent with the specification. *See, e.g.*, Dkt. No. 54, Plaintiff's Opening Claim Construction Brief, at 15–16. In particular, Plaintiff argues that the area to be viewed is selectable and may be zoomed in or out, while the items themselves may be selected to provide additional information. *Id.* Plaintiff argue that Defendant's construction suggests scaling of the items instead of scaling of the map in which the items are to be displayed. *Id.* at 16. Plaintiff argues that Defendant's construction attempts to import limitations from the specification into this claim term and combines limitations from the separate "converting" step. *Id.*

Defendant argues the term "scalably" is described in the specification in relation to the scale of the display and argues that the references zoom in and out with that display. *See, e.g.*, Dkt.

No. 56, Defendant's Responsive Claim Construction Brief, at 10–11. Defendant argues that a scale involves a relative sizing and that this scaling is made is in relation to the "area to be viewed on the display," and Defendant contends that these aspects are described in the specification. *Id.* Defendant argues that its construction allows the scale of the area to be viewed (such as a map) to be selected (adjusted), and this adjustment in scale changes how the items are to be displayed. *Id.* at 11. According to Defendant, its construction does not allow adjustment of the size of items independently of the area to be viewed because that would vitiate the word "scalably." *Id.* Defendant argues that Plaintiff's construction is wrong because it allows hypertext items to change in size independent of the scale of the area to be viewed, which it argues is contrary to the specification. *Id.* at 11–12. Defendant argues that whether and how an item can be selected to provide additional detail once displayed, and the scale of the item when initially displayed, are distinct concepts. *Id.* at 12.

In its Reply, Plaintiff argues that Defendant's construction is wrong in that it requires the mappable hypertext items to change in size. *See, e.g.*, Dkt. No. 58, Plaintiff's Reply Claim Construction Brief, at 4. Plaintiff argues that the specification does not teach that the items must change size, but that the hypertext items are always shown in an appropriate scale, as the map is being adjusted in size or detail. *Id.*

## (2) Analysis

Both of the parties propose a construction for the "selectably scalably" term. In the *Aaron Brothers* case, the parties agreed before the claim construction hearing that the term "selectably scalably" be construed to mean "capable of being chosen for adjustment in size or detail." *See Aaron Brothers* Order at 6. Likewise, in the *BP America* case, the parties agreed that the term "selectably scalably" be construed to mean "capable of being chosen for adjustment in size or

detail." *See BP America* Order at 11. Plaintiff's proposed construction is the same as previously agreed to by the prior parties. In this case, the parties' primary dispute as to this term is whether the hypertext items can be adjusted independently of the area to be viewed. For the reasons detailed below, the Court finds that Plaintiff's proposed construction is appropriate for this term.

Claim 11 recites "searching each of one or more unique mappable information code sequences, each of which said code sequences serving to uniquely represent one of said [mappable hypertext] items and copied from the memory of said computer or received from an alternate source, for a field containing geographical coordinates . . . ," "converting said [geographical] coordinates to an appropriately proportionate representation on said computer," and "displaying selectably scalably said [mappable hypertext] items" on the computer. Thus, the express claim language requires the "mappable hypertext item" to be displayable and that a user must be able to select a displayed mappable hypertext item to display additional information.

The specification teaches that the mappable hypertext items are displayed in the "scale of the area to be viewed on the display":

> All the aforementioned items are displayed according to their geographic locations in the **scale** of the area to be viewed on the display, which area to be viewed is selectable and may be zoomed in or out, for example, along with user's location symbol 6r.

'956 patent, col. 22, ll. 51–55 (emphasis added). This citation is the only reference to "scale" (or "scalably") in the patent specification. The specification also teaches that mappable hypertext items may be executably selected by the user to "provide additional information about the item, such as by enlarging the detail, called zooming in, or, for example, as hypertext, in which the item name or symbol can be selected or clicked on by a user to provide additional information." *Id.* at col. 22, ll. 25–30. Similarly, the specification teaches that as a user may approach a hotel, "the map

display would zoom in to reveal increasing detail, ultimately positioning them at the hotel's entrance." *Id.* at col. 6, ll. 44–47. Overall, the Court finds that the specification teaches that while the area to be viewed is selectable and may be zoomed in or out, the items themselves may be selected to provide additional information or detail about the item.

On balance, the Court rejects Defendant's arguments on this term. The Court finds that the intrinsic record is clear that "selectably scalably" allows scaling of the items in relation to something else, particularly, other items and the scale of the area to be viewed. The Court rejects Defendant's construction to the extent it does not allow adjusting the size of mappable hypertext items independent of the area to be viewed. Further, the Court notes that this ruling is consistent with agreed constructions by prior parties in both the *Aaron Brothers* case and the *BP America* case. However, the Court finds that the most appropriate construction for the term is limited to "adjustment in size" as opposed to "adjustment in size or detail." While the specification is clear that items can be selected to provide additional detail or information on the item, the disputed term at issue is "selectably scalably" and the constituent term "scale" requires an adjustment in size and not necessarily detail. *See* col. 22, ll. 51–55. The Court notes that Plaintiff did not dispute this construction when offered as a preliminary construction at the claim construction hearing.

The Court hereby construes the term "**selectably scalably**" to mean "**capable of being chosen for adjustment in size.**"

### D.  "a data field"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "one or more fields that provide: <br><br>(1) information as to whether the item's symbol, icon, or name is capable of being included with other items in an executably selectable menu that appears on the user's computer display; and <br><br>(2) information as to whether the item is to be included in a map displayed on the user's computer, and, if displayed, whether the item's symbol, icon, or name can be subsequently selected to provide additional information about the item" | "a field that provides information as to whether the item is capable of being included with other items in an executably selectable menu that appears on the user's computer display, whether it is to being included in the map displayed on the user's computer, and, if displayed, whether the item can be subsequently selected by a user to automatically provide additional information about the item, and that also includes executable code for animated icons or avatars." <br><br>*If the Court does not adopt Apple's proposed claim construction, this term is indefinite.* |

### (1) The Parties' Positions

Plaintiff contends that Judge Gilstrap's prior construction on this term is accurate but additionally requests that the "a data field" should be construed to mean "one or more data fields." *See, e.g.*, Dkt. No. 54, Plaintiff's Opening Claim Construction Brief, at 17–18. Plaintiff argues that such a construction is appropriate because of the general claim construction rule that "a" means "one or more" and the specification generally teaches that information can be contained in "fields" and should not be limited to just a single field. *See id.*

Defendant contends that the specification expressly defines each of the "field" terms, and thus the construction for each of the terms should follow the exact language in the specification. *See, e.g.*, Dkt. No. 56, Defendant's Responsive Claim Construction Brief, at 13–17. For the "data field" term, Defendant argues that the "full and complete" definition in the specification relied upon by Judge Gilstrap should be the construction for the term, instead of a "partial and incomplete construction." *Id.* at 14. Defendant argues there is no reason to define the "data field" term based

on a first definitional sentence in the patent and ignore a second definitional sentence in the patent

on the same term. *Id.* at 14–15. Defendant argues that the language "a data field" means that "at

least one field" — by itself — must qualify as a data field, not that multiple fields may be combined

together to form the claimed data field. *Id.* at 16.

In its Reply, Plaintiff argues that the general rule for "a" means that "one or more" fields

is appropriate, and that Defendant has not shown a reason for disregarding this rule. *See, e.g.*, Dkt.

No. 58, Plaintiff's Reply Claim Construction Brief, at 4.

### (2) Analysis

Both of the parties propose a construction for the "data field" term. In the *BP America* case,

the prior parties disputed the term and Judge Gilstrap construed the term (based on express lan-

guage in the specification) to mean "a field that provides: (1) information as to whether the item's

symbol, icon, or name is capable of being included with other items in an executably selectable

menu that appears on the user's computer display; and (2) information as to whether the item is to

be included in a map displayed on the user's computer, and, if displayed, whether the item's sym-

bol, icon, or name can be subsequently selected to provide additional information about the item."

*See BP America* Order at 29. In this case, the parties dispute (1) whether "data field" should include

a more complete definition as found in the specification, and (2) whether "a data field" should

mean "one or more" data fields. For the reasons detailed below, this Court finds that Judge Gil-

strap's original construction is appropriate and rejects both parties' attempts to add additional lim-

itations and/or modify the original construction.

Claim 11 requires "searching each of one or more unique mappable information code se-

quences, … [wherein] each of said code sequences includes an item reference field, a name field,

a location field including said geographical coordinates, and a data field."

25

FIG. 12 is a diagram showing a mappable hypertext code sequence, with individual mappable hypertext items. *See* '956 patent, col. 11, ll. 23–26. In particular, FIG. 12 shows mappable hypertext code 29 consisting of element item reference 29a, identifier 29b, location 29c, and data type 29d. *Id.* at col. 21, ll. 51–54. The '956 patent provides a description of each of these items. *See, e.g., id.* at col. 22, ll. 1–32. Each of these four separate items is claimed in claim 11. Both parties agree that element data type 29d refers to the claimed "data field" term. Referring to the "data field" term, the specification provides a full description of the term:

> [1] Element data type 29d provides information as to whether the item's symbol, icon, or name is capable of being included with other items in a executably selectable menu which appears to pop up, that is, to quickly graphically appear adjacent to the icon or text item which was executably selected by the user, on the user's computer display, whether it is to be included in the map displayed on user's computer, and, if displayed, whether the item's symbol, which may be a standard display symbol which is resident in memory, including storage, on user's device, or the item name can be subsequently selected by a user to automatically provide additional information about the item, such as by enlarging the detail, called zooming in, or, for example, as hypertext, in which the item name or symbol can be selected or clicked on by a user to provide additional information. [2] Data type 29d also includes executable code for animated icons or avatars (graphic elements which represent their users in such a display).

'957 patent, col. 22, ll. 15–32 (numbering ([1], [2]) added). This specification citation includes a first sentence and a second sentence, denoted with the [1] and [2] placeholders in the above specification citation. Both parties agree that the first sentence is a definition and/or limiting to the term, but disagree as to the effect of the second sentence.

Judge Gilstrap ruled on this term in the *BP America* case. Judge Gilstrap found that a person of ordinary skill in the art would understand that the plain language of the claimed "data field" is

referring to the embodiment disclosed in the specification that describes four data fields. *BP America* Order at 25–26. Judge Gilstrap also found that the patentee intended to limit the claimed "data field" to the disclosed embodiment. *Id.* at 26–27. Based on the specification at column 22, lines 15–30, Judge Gilstrap found that a person of ordinary skill in the art would understand that the claimed data field is an element that provides:

> (1) information as to whether the item's symbol, icon, or name is capable of being included with other items in an executably selectable menu that appears on the user's computer display; and
>
> (2) information as to whether the item is to be included in a map displayed on the user's computer, and, if displayed, whether the item's symbol, icon, or name can be subsequently selected to provide additional information about the item.

*Id.* at 27–28. Judge Gilstrap found that this construction of the term was consistent with the claim language, the specification, and the prosecution history. *Id.* at 28.

The Court rejects Defendant's arguments that the "data field" term should be further limited by the second sentence in the specification relating to the "data field" term. In particular, the Court finds that the data field should not be limited to "executable code for animated icons or avatars." First, the specification was fully analyzed by Judge Gilstrap in the *BP America* Order, and there is no reason to believe that the Court did not look at the complete disclosure in the specification relating to this term as part of his construction. In other words, if the Court thought that the additional phrase of "includes executable code for animated icons or avatars" was a necessary part of the construction, it would have actually included it in the construction. Second, the Court is not convinced that such a statement in the specification is a narrowing limitation to or a definitional statement of the term. Even if a patentee provides a meaning or definition to a term in the specification does not necessarily mean that each and every word in the specification related

to that term must be a limitation or part of the construction of the term. Defendant provides no argument why this additional phrase is a necessary part of the construction of the term besides the mere fact that it disclosed in the specification related to the defined "data field" term. In other words, Defendant simply argues that because the term is defined in the specification, each word in the specification must necessarily be a limiting definition. The Court disagrees with this argument. Here, it is clear that the phrase "includes executable code for animated icons or avatars" was not intended by the patentee to be a definitional statement to the "data field" term. It is not necessary for a full or complete understanding of the term. It is not related to any other limitation in the claim or the "data field" term itself. This is not a situation where the construction is a "partial" construction of the term or that ignoring the additional disclosure in the specification would result in an "incomplete" construction for the term. At best, this second sentence is merely an embodiment in the specification that should not be imported into the claim term. *See, e.g.*, *Innova/Pure Water*, 381 F.3d at 1117. Further, the Court finds that by including such language in an additional sentence in the specification ("Data type 29d also includes …"), the patentee indicated that it was not to be part of the definitional meaning of the term, which was separately provided in the first sentence (*see, e.g.*, col. 22, ll. 15–30). Overall, the Court rejects Defendant's arguments that the "data field" term should be further limited by the specification and finds that Judge Gilstrap's prior construction to be a full and complete construction for this term.

The Court rejects Plaintiff's arguments that "a data field" should mean "one or more fields." While there is a general rule in claim language that the article "a" may mean "one or more," that does not change the claim language at issue here which requires "a data field." In other words, the claim language very clearly recites "an item reference field," "a name field," "a location field,"

and "a data field." Consistent with the claim language, the specification clearly discloses an embodiment (FIG. 12) which includes four separate and distinct fields. *See, e.g.*, col. 22, ll. 1–30. While there may be more than one data field, or more fields than just a "data field" or the other claimed "fields," this does not change the requirement in the claim and the specification that there must be "a [single] data field" that includes the construed limitations. The Court rejects Plaintiff's apparent attempt to argue that multiple, distinct fields may be combined to satisfy the "a data field" limitation. This is contrary to the claim language and the specification. Further, the Court notes that Plaintiff's argument was expressly rejected by the Court in a summary judgment order of noninfringement in the *BP America* case:

> Plaintiff cites the familiar Baldwin rule that the indefinite article "a" means "one or more." *See Baldwin Graphic Sys., Inc. v. Sibert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008). Plaintiff misapplies this rule here. A code sequence comprising "a" data field must include one or more data fields — that is, one or more fields, each of which contains all information necessary to be considered a "data field." It is not the case that the data field limitation should be read as a requirement that one or more fields, combined, may be considered to be a data field if they contain adequate information.

*BP America* case, Dkt. No. 553 at 3 (E.D. Tex. Jan. 7, 2014). The Court agrees that "a data field" should not be read as "one or more fields" combined.

The Court hereby construes the term "**a data field**" to mean "**a field that provides: (1) information as to whether the item's symbol, icon, or name is capable of being included with other items in an executably selectable menu that appears on the user's computer display; and (2) information as to whether the item is to be included in a map displayed on the user's computer, and, if displayed, whether the item's symbol, icon, or name can be subsequently selected to provide additional information about the item.**"

### E.  "item reference field," "name field," and "location field"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "item reference field" | No construction is necessary | "a field that provides a code which determines the ordering of a particular element in a display of a table of similar such items or within a database of such information" |
| "name field" | No construction is necessary | "a field that provides the item's name and, if applicable, the location or address, which may be a URL, of its additional information" |
| "location field" | No construction is necessary | "a field that provides geographical location, in longitude and latitude or in reference to a given feature" |

Each of these "field" terms is grouped together based on similar analysis by the parties.

### (1) The Parties' Positions

Plaintiff contends that each of the "field" terms (besides a "data field") should have its plain and ordinary meaning. *See, e.g.*, Dkt. No. 54, Plaintiff's Opening Claim Construction Brief, at 21–24. Plaintiff argues that the terms are used in the claims consistent with their plain meaning and are readily understandable by a jury, making a construction unnecessary. *Id.* at 21. Plaintiff argues that Defendant's constructions impermissibly add limitations into the well-understood claim terms. *Id.* Plaintiff argues that there was no lexicographical definition for these terms in the specification. *Id.* at 22. For the "item reference field" term, Plaintiff argues that the plain language indicates simply that the "field" must be one that provides a reference to the "item." *Id.* For the "name field" term, Plaintiff argues that the plain language indicates that the field provides a reference to the item's name, but not that it must include a URL of the item. *Id.* at 23.  For the "location field" term, Plaintiff argues that the plain language indicates that it is simply the geographical location of the item, but need not require longitude and latitude information. *Id.*

According to Defendant, the specification expressly defines each of the "field" terms, and thus the construction for each of the terms should follow the exact language in the specification. *See, e.g.*, Dkt. No. 56, Defendant's Responsive Claim Construction Brief, at 13. Defendant argues that the patent explicitly defined each of these terms and provides language identical to the construction that it proposes. *Id.* at 17–20. Defendant argues that Plaintiff provides no good reason as to why the definitions from the specification should not be adopted. *See id.*

In its Reply, Plaintiff argues that nothing in the patent suggests that these terms were specifically limited or defined other than their plain and ordinary meaning. *See, e.g.*, Dkt. No. 58, Plaintiff's Reply Claim Construction Brief, at 5–7. Plaintiff argue that Defendant's constructions impermissibly rely on embodiments. *See id*.

### (2) **Analysis**

For the "item reference field," "name field," and "location field" terms, the parties dispute whether a plain and ordinary meaning is appropriate for the terms. In particular, the parties dispute whether the '956 patent provides lexicographical definitions for each of these terms, similar to the "data field" term. The prior claim construction orders have not specifically addressed or construed these terms.

Claim 11 requires "searching each of one or more unique mappable information code sequences, . . . [wherein] each of said code sequences includes an item reference field, a name field, a location field including said geographical coordinates, and a data field."

FIG. 12 is a diagram showing a mappable hypertext code sequence, with individual mappable hypertext items. *See* '956 patent, col. 11, ll. 23–26. In particular, FIG. 12 shows mappable hypertext code 29 consisting of element item reference 29a, identifier 29b, location 29c, and data type 29d. *Id.* at col. 21, ll. 51–54. The '956 patent provides a description of each of these items.

*See, e.g., id.* at col. 22, ll. 1–30. Each of these four separate items is claimed in claim 11. The parties agree that the four fields in claim 11 are described by the embodiment disclosed in relation to FIG. 12 but disagree whether the statements as to each of the fields act as lexicographical definitions to the terms.

The specification teaches that each of the "item reference field," "name field," and "location field" have particular meanings:

> **Element item reference 29a** is a code which determines the ordering of a particular element in a display of a table of similar such items or within a database of such information.
>
> For example, should code 29 refer to a merchant desiring out-of-order placement of the merchant's information in an ordered display of similar information, **item reference 29a** would be appropriately changed to automatically provide the out-of-order placement on a user's display of such information. **Element identifier 29b** provides the mapped item's name and, if applicable, the location or address, which may be a URL, of its additional information. **Element location 29c** provides the item's geographical location, in longitude and latitude or in reference to a given feature which the element location provides.

'956 patent, col. 22, ll. 1–15 (emphasis added). Defendant's proposed constructions adopt the language straight from the specification, while Plaintiff argues that there is no lexicographical definition and the terms should simply have their plain and ordinary meaning.

*Phillips* makes clear that a patentee may give a special definition to a term that differs from the plain and ordinary meaning of that term:

> Consistent with that general principle, our cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs. In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive.

*Phillips*, 415 F.3d at 1316 (internal citations omitted). Thus, "[w]hen a patentee explicitly defines a claim term in the patent specification, the patentee's definition controls." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009) (citation omitted). "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).

The prior claim construction orders on the '956 patent have not specifically construed these terms. However, Judge Gilstrap discussed these "field" terms in relation to the analysis and construction of the related "data field" term. *See BP America* Order at 26–28. In particular, he found that one of skill in the art would recognize that claim 11 is directed to the embodiment disclosed in the specification related to FIG. 12. *See id.* He also found that the first three claimed fields in claim 11 — "item reference field," the "name field," and "location field" — match the first three fields described in the specification. *Id.* at 26, note 6.

The Court agrees with Judge Gilstrap that the claimed "fields" terms match the "fields" described in the specification in FIG. 12 and at col. 22, ll. 1–30. Having reviewed the claim language, the specification, and the prosecution history, the Court finds that a person of ordinary skill in the art would understand that the patentee intended to limit the claimed "fields" terms to the embodiment disclosed in the specification. However, the fact that a term is limited by the specification does not necessarily mean that each and every word in the specification related to that term should be part of a construction of the term in dispute.

Regarding the claim term "item reference field," the specification teaches that "element item reference 29a <u>is a</u> code which determines the ordering of a particular element in a display of

a table of similar such items or within a database of such information." '956 patent, col. 22, ll. 1–
4 (emphasis added). On balance, the Court finds that the patentee intended to limit the "item ref-
erence field" term to the description in the specification on this term. In this instance, the Court
places a strong emphasis on the use of "is" in the specification ("element item reference 29a is a
code . . ."). This is not a term that is readily understood or has a plain and ordinary meaning.
Further, outside of this context, the "item reference field" has no meaning to one of skill in the art,
nor has Plaintiff argued that one of skill in the art would understand the "item reference field" term
to be a well understood term. Indeed, Plaintiff's plain meaning construction simply rearranges the
disputed term's words and contends that a "field" must be one that provides a "reference" to the
"item." *See* Dkt. No. 54 at 22. The Court finds that Plaintiff's plain meaning construction, besides
being entirely divorced from the intrinsic record, provides no meaningful description to this term,
as any field must necessarily "refer" to the item. On balance, the Court finds that Defendant's
construction for this term — based on the specification — is appropriate.

Regarding the claim term "name field," the specification teaches that "element identifier
29b provides the mapped item's name and, if applicable, the location or address, which may be a
URL, of its additional information." '956 patent, col. 22, ll. 10–12 (emphasis added). On balance,
the Court finds that such a statement is not a lexicographical definition of the term. First, the claim
term is "name field" and not "identifier field" as used in the specification. Thus, the reference in
the specification to "identifier" may not necessarily be limiting to the differently claimed "name"
field. Second, in this instance, the Court places a strong emphasis on the use of "provides" in the
specification ("element identifier 29b provides …"). The Court is not convinced that the word
"provides" indicates an intent by the patentee to provide a specific lexicographical definition for
this term. Third, on its face, the term "name field" is readily understood and has a plain meaning

to one of skill in the art, which is consistent with the specification. In other words, the specification's treatment of the term is consistent with the plain and ordinary meaning of the term (*e.g.*, a reference to the item's name). Overall, the Court finds that the patentee did not intend a lexicographical definition to the "name field" term separate from a plain and ordinary meaning. However, the Court concludes that a construction would be helpful to this term. The Court finds that the phrase "a field that provides the item's name" is appropriate based on the intrinsic record and the plain and ordinary meaning of the term.

Regarding the claim term "location field," the specification teaches that "element location 29c <u>provides</u> the item's geographical location, in longitude and latitude or in reference to a given feature which the element location provides." '956 patent, col. 22, ll. 12–15 (emphasis added). On balance, the Court finds that such a statement is not a lexicographical definition of the term. First, in this instance, the Court places a strong emphasis on the use of "provides" in the specification ("element location 29c <u>provides</u> …"). The Court is not convinced that the word "provides" indicates an intent by the patentee to provide a specific lexicographical definition for this term. Second, the claim language already requires the "location field" to have "geographical coordinates" of the item. To the extent the patentee wanted to specifically claim how the geographical coordinates were to be limited, he could have easily done so in the claims. Third, on its face, the term "location field" is readily understood and has a plain meaning to one of skill in the art, which is consistent with the specification. In other words, the specification's treatment of the term is consistent with the plain and ordinary meaning of the term (*e.g.*, a reference to the item's location). Overall, the Court finds that the patentee did not intend a lexicographical definition to the "location field" term separate from a plain and ordinary meaning. However, the Court finds that a construction would

be helpful to this term. The Court finds that the phrase "a field that provides the item's geograph-ical location" is appropriate based on the intrinsic record and the plain and ordinary meaning of the term.

On balance, and as detailed above, the Court finds that a construction of these terms would help the jury and resolve the parties' disputes as to the meaning of these terms. The Court rejects Plaintiff's arguments that a simple plain and ordinary construction is appropriate.

The Court hereby construes the term "**item reference field**" to mean **"a field that provides a code which determines the ordering of a particular element in a display of a table of similar such items or within a database of such information."**

The Court hereby construes the term "**name field**" to mean **"a field that provides the item's name."**

The Court hereby construes the term "**location field**" to mean **"a field that provides the item's geographical location."**

## F. "displaying"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "said computer causing to appear" | No construction required. |

### (1) The Parties' Positions

Plaintiff argues that the relevant claim language requires the computer to perform the step and not a user. *See, e.g.*, Dkt. No. 54, Plaintiff's Opening Claim Construction Brief, at 14–15. Plaintiff argues that the specification confirms its construction, which should be adopted to clarify the "displaying" step is performed by the computer." *Id.* Plaintiff argues that Judge Folsom and Judge Gilstrap have previously ruled that the term "displaying" means "said computer causing to

appear." *Id.* Plaintiff argues that Defendant's construction does not provide any guidance as to who or what is performing the "displaying" step. *Id.* at 15.

Defendant argues that Plaintiff's construction seeks to resolve a dispute that does not exist. *See, e.g.*, Dkt. No. 56, Defendant's Responsive Claim Construction Brief, at 20–21. Defendant argues the parties have already agreed that the same computer performs all steps of the asserted claim, and thus there is no dispute that the same computer must perform each of the individual "searching," "converting," and "displaying" steps. *Id.* at 21. Thus, Plaintiff's construction is unnecessary and should be rejected. *Id.*

In its Reply, Plaintiff argues that because Defendant does not agree to Plaintiff's construction, there is some dispute regarding this term. *See, e.g.*, Dkt. No. 58, Plaintiff's Reply Claim Construction Brief, at 7. Plaintiff argues that the intrinsic record supports its construction that the computer "causes" the step of displaying. *Id.*

### (2) Analysis

The parties dispute whether a plain and ordinary meaning applies to this term, and in particular whether any construction is needed at all. In the *Aaron Brothers* case, the parties disputed whether the term had its plain and ordinary meaning or whether it meant "causing to appear." Judge Folsom construed the term to mean "said computer causing to appear." *See Aaron Brothers* Order at 20–21. Likewise, in the *BP America* case, the parties disputed whether the term had its plain and ordinary meaning or whether it meant "causing to appear." Judge Gilstrap construed the term to mean "said computer causing to appear." *See BP America* Order at 44. Plaintiff's proposed construction is the same as previously construed by both Judge Folsom and Judge Gilstrap.

As an initial note, Defendant does not challenge the construction proposed by Plaintiff, but merely states that a construction is not necessary. On balance, the Court finds that the parties have

a dispute over the proper scope of the claim language that must be resolved by the Court. For the reasons detailed below, this Court finds that Plaintiff's proposed construction is appropriate for this term.

The term "displaying" appears in element "c" of claim 11 in the phrase "displaying selectably scalably said items on said computer whereby said user may quickly receive and display timely situation information." It is clear from the claim language that the items and information are displayed to a user on the computer.

The specification has numerous disclosures that the computer causes the displaying step and not the user. For example, the specification discloses "graphically displaying on the user's display symbols and text appropriately relating to the [mappable hypertext] items." *See* '956 patent at col. 21, ll. 63–64. The specification further discloses that "it is desirable that the form factor of the situation information device provide a usefully large display or graphical display unit (GDU)." *Id.* at col. 5, ll. 48–50. In one embodiment, the specification discloses that "a menu of available lists are caused to appear on [a] device display…" *Id.* at col. 25, ll. 18–21. In another embodiment, the specification discloses when "the user's location … approaches within a selectable distance … proximate station banner [] appears on [the] display …" *Id.* at col. 13, ll. 30–33. The specification uses similar descriptions to teach other embodiments. *See id.* at col. 16, l. 30; col. 19, ll. 28–32; col. 22, ll. 18–22. Thus, the claim language is consistent with the specification in that displaying is performed by the computer.

The Court finds that the best reading of this term in light of the intrinsic record as a whole is that the computer does the "displaying" of the items. Again, the Court notes that Defendant does not challenge the construction proposed by Plaintiff, but merely states that a construction is not

necessary. Further, the Court notes that the parties have agreed in this case that the same computer performs all steps of the asserted claim.

The Court hereby construes the term "**displaying**" to mean "**said computer causing to appear.**"

### G. "optionally executably selected by said user to provide additional of said situation information"

| Plaintiff's<br>Proposed Construction | Defendant's<br>Proposed Construction |
|---|---|
| "displayed in a manner that permits the user to select the item so as to provide additional situation information about the item" | additional of said situation information: "new information transmitted from the service provider."<br><br>*The remainder of this phrase does not require construction. If the Court does not adopt Apple's proposed claim construction, this term is indefinite.* |

### (1) The Parties' Positions

Plaintiff contends that the construction agreed to by parties in prior litigation is accurate and that Defendant's construction imports impermissible limitations. *See, e.g.*, Dkt. No. 54, Plaintiff's Opening Claim Construction Brief, at 18–20. Plaintiff argues that neither the claims nor the specification requires the information to be "new information" or provided from the "service provider." *Id.* Plaintiff argues that Defendant's construction includes impermissible limitations to non-limiting embodiments in the specification. *Id.* at 20.

Defendant argues that its construction gives meaning to all of the terms in the claim. *See, e.g.*, Dkt. No. 56, Defendant's Responsive Claim Construction Brief, at 21. Defendant argues that the claim language requires additional of the same situation information that was already received and displayed, and the specification teaches that it is "new information transmitted from the service provider." *Id.* at 21–22. Defendant argues that Plaintiff's construction is contrary to the claims and

the specification and would render the "said" term in the claim a nullity. *Id.* at 22.  Defendant also contends that without a requirement that the additional of said information be new information transmitted by a service provider, the claim is indefinite. *Id.* at 23.

In its Reply, Plaintiff argues that the use of "said" in the claim indicates the correct construction is "additional information" of the situation information and not "new information." *See, e.g.*, Dkt. No. 58, Plaintiff's Reply Claim Construction Brief, at 8. Plaintiff argues that it is unclear what is meant by Defendant's use of the word "new." *Id.*

### (2) Analysis

Both parties propose a construction for the phrase "optionally executably selected by said user to provide additional of said situation information." In the *Aaron Brothers* case, the parties disputed the meaning of the term and Judge Folsom construed the term to mean "displayed in a manner that permits the user to select the item so as to provide additional situation information about the item." *See Aaron Brothers* Order at 23–24. In the *BP America* case, the parties agreed that the term be construed to have the same meaning as provided by Judge Folsom. *See BP America* Order at 11. Plaintiff's proposed construction is the same as previously agreed to by the prior parties and the same construction provided by Judge Folsom. Here, the parties' dispute is focused on whether the phrase requires "new information" provided by the "service provider." For the reasons detailed below, this Court finds that Plaintiff's proposed construction is appropriate for this term.

Step (c) of claim 11 is reproduced

> displaying selectably scalably said items on said computer whereby said user may quickly receive and display timely <u>situation infor-mation</u> mapped in the context of spatial information, including appropriate to a geographical or other area, in which said mappable

> hypertext items are quickly received, mapped, and **optionally exe-
> cutably selected by said user to provide additional of said situa-
> tion information** <u>or</u> received, stored, and transmitted by a provider
> of said situation information.

(emphasis added).  On its face, the claim does not require "additional of said situation information"

to be provided by a "service provider." The disjunctive "or" provides that hypertext items may be

(1) "received, mapped, and optionally executably selected by said user …" or (2) "received, stored,

and transmitted by a provider of said situation information." Thus, the service provider limitation

applies only to the "received, stored, and transmitted" clause and not the prior "received, mapped,

and optionally executably selected by said user …" clause. Likewise, the use of "said situation

information" in the disputed term refers to the previously recited "timely situation information" in

the claim. Further, such a reading of the claim is consistent with the prior rulings as to the con-

struction of step (c) of claim 11.

The specification teaches that the mappable hypertext items can be selected to access ad-

ditional information:

> A computer memory organized to include mappable hypertext code
> sequence 29 in FIG. 12 provides for rapid display of mappable in-
> formation items, including map features, information sources,
> names, menus, and lists, certain of which may be executably se-
> lected by a user in order to <u>display additional information</u> related to
> any of such items, called a hypertext element, <u>by receiving new in-
> formation transmitted from the service provider.</u>

'956 patent, col. 21, ll. 55–62 (emphasis added). Defendant's construction is based on this portion

of the specification, and it argues that other specification citations are not relevant to the claim

language. However, other portions of the specification teach that "additional of said situation in-

formation" need not be "new." For example, the specification discloses an embodiment that, in

relation to FIG. 2, symbol 6a "can be a mappable hypertext item that the user may executably

select in order to <u>receive additional information</u> or execute computer code associated with it as described in FIG. 12 below." '956 patent at col. 12, ll. 27–30 (emphasis added). The specification also discloses multiple examples where a mappable hypertext item "may be executably selected by user to <u>provide additional information</u> or execute computer code as described in FIG. 12 below." *Id.* at col. 13, ll. 34–37 (emphasis added); *see a*lso col. 15, ll. 4–6. The specification also discloses that the mappable hypertext item "can be subsequently selected by a user to automatically provide <u>additional information</u> about the item, such as by enlarging the detail, called zooming in, or, for example, as hypertext, in which the item name or symbol can be selected or clicked on by a user to <u>provide additional information</u>." *Id.* at col. 22, ll. 25–30 (emphasis added). These other specification citations clearly do not require the additional information to be "new information transmitted from the service provider."

The Court rejects Defendant's arguments on this term. On balance, the Court finds that the most appropriate construction for the phrase, based on the surrounding claim language and the specification, to be "displayed in a manner that permits the user to select the item so as to provide additional situation information about the item." Further, the Court finds support in the intrinsic record for Plaintiff's proposal that "additional of said situation information" simply means "additional situation information about the item." The Court rejects Defendant's arguments that the limitation is limited to "new information" or information "transmitted from the service provider." Had the patentee wanted to limit the claim to "new" information, he could have easily done so. At best, the Court finds that the examples in the specification relied upon by Plaintiff are non-limiting embodiments of the invention that should not be imported into the claims. The Federal Circuit has consistently held that "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water,* 381 F.3d at 1117. Even

where a patent describes only a single embodiment, absent a "clear intention to limit the claim scope," it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification. *Id.*; *see also Liebel-Flarsheim*, 358 F.3d at 906; *Comark,* 156 F.3d at 1187; *Arlington*, 632 F.3d at 1254; *Phillips*, 415 F.3d at 1323.  Further, the Court notes that this ruling is consistent with Judge Folsom's construction of this term in the *Aaron Brothers* case, as well as the agreement by the parties in the *BP America* case.

The Court hereby construes the term "**optionally executably selected by said user to provide additional of said situation information**" to mean "**displayed in a manner that permits the user to select the item so as to provide additional situation information about the item.**"

### H.  "converting said coordinates to an appropriately proportionate representation"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "using the geographical coordinates associated with the item to determine the location of the display of a representation of the item, which has a size, quantity, or degree that is appropriate in relation to something else" | Indefinite |

#### (1) The Parties' Positions

Plaintiff argues that Judge Gilstrap construed the phrase and found that its meaning was clear to one of skill in the art and that Defendant's indefiniteness position is unsupported and should be rejected. *See, e.g.*, Dkt. No. 54, Plaintiff's Opening Claim Construction Brief, at 25. Plaintiff argues that his construction needs clarification because it did not capture all of the Court's findings. *Id.* at 25–27. In particular, Plaintiff argues that the prior construction did not provide clear guidance as to what is meant by an "appropriately scaled representation" of the item. *Id.* at 27. Plaintiff contends that its proposed construction resolves any ambiguity in the prior construction by adopting the specific findings by the Court presented in the prior order. *See id.* at 25–28.

Defendant contends that the term is indefinite because the claim uses the words "converting" and "proportionate" in inconsistent and irreconcilable ways. *See, e.g.*, Dkt. No. 56, Defendant's Responsive Claim Construction Brief, at 23–27. Defendant argues that there are at least three possible interpretations of the "converting" phrase, and none are clearly either more nor less correct, and thus the term is indefinite. *See id.* Defendant argues that if "converting" is given its plain and ordinary meaning, it is inconsistent with the rest of claim 11. *Id.* at 24. According to Defendant, if the construction focuses on the term "proportionate," there is no intrinsic support for the "converting" limitation to convert a single point or single set of coordinates to a "proportionate representation." *Id.* at 25. Defendant also argues that if "proportionate" is given its plain and ordinary meaning, it is inconsistent with a plain meaning approach to the "conversion" term, but there is nothing in the specification that redefines "conversion" to mean "determining the location of." *Id.* at 25–26. Defendant argues that because a person of skill in the relevant art would have faced multiple potential constructions of the "converting" term and because there is no way to decide which option is correct, the term is indefinite. *See id.* at 26–27. According to Defendant, Plaintiff's construction may seek to merely "clarify" the *BP America* construction, but it is a very different construction that seeks to determine where to place the item regardless of how it is generated. *See id.* at 25, note 8.

In its Reply, Plaintiff contends that Defendant's indefiniteness arguments should be rejected. *See, e.g.*, Dkt. No. 58, Plaintiff's Reply Claim Construction Brief, at 8–9. Plaintiff argues that Defendant's indefiniteness arguments impermissibly dissect different terms into separate segments without the context of the claim as a whole. *Id.* Plaintiff argues that the disputed term, when read in the entire context, is definite based on the clarification presented by its proposed construction. *Id.*

44

### (2) Analysis

The parties dispute whether the term is indefinite. Plaintiff's proposed construction is a modification to the construction provided in the *BP America* case, while Defendant contends that the term is indefinite. For the reasons detailed below, this Court finds that the term is not indefinite and modifies the prior construction to address the new issues raised by the parties in this case.

Step (b) of claim 11 recites "converting said coordinates to an appropriately proportionate representation on said computer." In the *BP America* case, the parties disputed the meaning of the term and the Court construed the term to mean "using the geographical coordinates associated with the item to generate an appropriately scaled representation of the item, which is capable of being displayed." *See BP America* Order at 42. The Court made the following findings:

> It is clear from the intrinsic evidence that the coordinates are not the item, but instead are associated with an item to provide the geographical location of the item.
>
> * * *
>
> [T]he the plain language of the claim requires that the geographical coordinates are associated with a particular mappable hypertext item.
>
> * * *
>
> Defendants contend that the term "proportionate" means "having the correct relationship in size, quantity, or degree to something else." [] (defining "proportionate" as "proportional" and thus "corresponding in size, degree, or intensity"). The Court finds that these definitions are consistent with the intrinsic evidence. Thus, in the context of the '956 Patent, the term "proportionate" indicates that the claimed representation should have a size, quantity, or degree that is scaled (i.e., "appropriate") in relation to something else.
>
> * * *
>
> [Step c] uses the geographical coordinates associated with the item to generate a representation of the item that is capable of being

      mapped and appropriately scaled in size or detail (i.e., "appropri-
ately proportionate").

* * *

      The disputed "converting …" step is referring to providing the geo-
graphical coordinates associated with an item so that an appropri-
ately scaled representation of the item is capable of being shown on
a display.

* * *

      [T]he Court finds that the coordinates are associated with an item
and are used to generate an appropriately scaled representation of
the item, which is then capable of being shown on a display.

* * *

      One of ordinary skill in the art would understand that the "unique
mappable information code sequences," which includes the "geo-
graphic coordinates" associated with an item, enable the code to de-
termine "a measurably appropriate relation to other such items of
geographical features shown on the display." '956 Patent at 21:65–
67. In other words, the "coordinates" are neither converted "into an
appropriately proportionate representation of the coordinates" as
Plaintiff contends, nor converted into "an appropriately scaled rep-
resentation of the item" as Defendants contend. Instead, the coordi-
nates are associated with an item and used to generate an appropri-
ately scaled representation of the item, which is capable of being
displayed.

*BP America* Order at 39–42.

      Plaintiff argues that this construction requires modification because it does not provide

clear guidance as to what an "appropriately scaled representation" of the item is. In particular,

Plaintiff argues that the construction requires clarification because it "does not capture the Court's

findings (1) that the coordinates are used to determine the location of the display of a representation

of the item and (2) that an "appropriately scaled representation of the item" has a size, quantity, or

degree that is appropriate in relation to something else." *See* Dkt. No. 54 at 25–26. Defendant

argues that there are at least three possible interpretations of the "converting" phrase, none are

46

clearly more or less correct, and thus the term is indefinite. *See* Dkt. No. 56 at 23–27. Both of the parties' arguments recognize that the prior construction needs clarification to resolve the dispute between the present parties.

The specification teaches that the mappable hypertext items are displayed to scale on the map:

> A computer memory organized to include mappable hypertext code sequence 29 in FIG. 12 provides for rapid display of mappable information items, including map features, information sources, names, menus, and lists, certain of which may be executably selected by a user in order to display additional information related to any of such items, called a hypertext element, by receiving new information transmitted from the service provider. Additionally, code 29 provides for graphically displaying on the user's display symbols and text appropriately relating to the items and in a manner **which shows each item in a measurably appropriate relation to other such items of geographical features shown on the display** in an information sequence of data elements.
>
> * * *
>
> All the aforementioned **items are displayed according to their geographic locations in the scale of the area to be viewed on the display**, which area to be viewed is selectable and may be zoomed in or out, for example, along with user's location symbol 6r.

'956 patent, col. 21, ll. 55–67; col. 22, ll. 51–55 (emphasis added).

As an initial matter, the Court notes that Plaintiff's proposed construction is inconsistent with the Court's prior construction. In particular, Plaintiff's construction seeks to change that construction from "using the geographical coordinates . . . to generate an appropriately scaled representation . . ." to an entirely different construction of "using the geographical coordinates . . . to determine the location of the display . . . ." Such a construction is inconsistent with the intrinsic record.

As mentioned above, this Court previously construed the term to mean "using the geographical coordinates associated with the item to generate an appropriately scaled representation of the item, which is capable of being displayed." *BP America* Order at 42. The Court found that the term "proportionate" meant "having the correct relationship in size, quantity, or degree to something else." *BP America* Order at 40. The Court finds that this definition of "proportionate" is consistent with the intrinsic record. Likewise, the specification teaches that the mappable hypertext items may be appropriately displayed in a "measurably appropriate relation to other such items of geographical features." '956 patent, col. 21, ll. 63–67. On balance, the Court finds that the most appropriate construction for the phrase "appropriately scaled representation" is "an appropriate representation [of the item] that is appropriately scaled in size in relation to other such items of geographical features displayed." This is well supported in the intrinsic record.

The Court proposed the following phrase as a preliminary construction at the claim construction hearing: "using the geographical coordinates associated with the item to generate an appropriate representation of the item that is appropriately scaled in size, quantity, or degree in relation to other such items of geographical features displayed." During the claim construction hearing, both parties largely agreed to the Court's preliminary construction. In other words, this preliminary construction resolved the disputes between the parties as to this term and was generally agreed to by the parties. However, Defendant suggested that the phrase "size, quantity, or degree" should be limited to just "size," while Plaintiff agreed that the word "degree" should be removed but preferred to keep the term "quantity" in the construction. On balance, the Court is not convinced that the words "quantity" and "degree" are necessary or appropriate to the term's construction based on the intrinsic record. Instead, the Court finds that the phrase "scaled in size" is most

appropriate based on the intrinsic record, which is also consistent with the "size" limitation in the separately construed "selectably scalably" term.

Thus, the Court rejects Defendant's arguments that the term is indefinite. Rather than looking at the intrinsic record and the disputed term in context of the entire claim, Defendant argues various constituent terms separately without proper context in the claim and the intrinsic record. Based in part on the findings made earlier and the analysis contained herein, the Court finds that there is no dispute that one of ordinary skill in the art would understand with "reasonable certainty" the scope of the invention and the bounds of the claims. Accordingly, pursuant to the Supreme Court's holding in *Nautilus*, the Court rejects Defendant's arguments that the claim when "read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." The Court therefore finds that Defendant has failed to prove by clear and convincing evidence that the claimed phrase is indefinite. The Court also notes that Defendant generally stood on its briefing and did not present substantial argument at the claim construction hearing other than the issues discussed above.

The Court hereby construes the term "**converting said coordinates to an appropriately proportionate representation**" to mean "**using the geographical coordinates associated with the item to generate an appropriate representation of the item that is appropriately scaled in size in relation to other such items of geographical features displayed.**"

## I.   Step (c) of claim 11 — "displaying selectably scalably said items . . ."

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "displaying selectably scalably said items on said computer, whereby said user may, quickly, receive and display timely situation information mapped in the context of spatial information, including spatial information appropriate to a geographical or other area, and whereby said mappable hypertext items are, quickly, either: (1) received, mapped, and optionally executably selected by said user to provide additional of said situation information; or (2) received by a provider of said situation information, stored by a provider of said situation information, and transmitted by a provider of said situation information" | Indefinite |

### (1) The Parties' Positions

Plaintiff contends that the phrase is not indefinite because the Court has construed the phrase twice already. *See, e.g.*, Dkt. No. 54, Plaintiff's Opening Claim Construction Brief, at 28–30. Plaintiff argues that one of skill in the art would understand the scope of the claim based on the Court's prior constructions. *See id.* Regarding the "quickly" terms, Plaintiff argues that the term "quickly" modifies receiving of timely situation information and mappable hypertext items, and the speed at which information is provided is based on the corresponding application of the invention. *Id.* Plaintiff argues that the exact rate at which information is received will vary and is not relevant to understanding step (c) of claim 11. *Id.* at 30.

According to Defendant, the reference to "quickly" is a term of degree, and because there are no boundaries in the specification as to what is meant by the term, it is wholly subjective and thus indefinite. *See, e.g.*, Dkt. No. 56, Defendant's Responsive Claim Construction Brief, at 27. Defendant argues the case law for indefiniteness has changed since Judge Folsom's findings, requiring a separate analysis by this Court. *Id.* at 28. Defendant argues that "quickly" applies to both

computer actions ("received" and "mapped") as well as a user action ("selected"). *Id.* Defendant contends that a person of skill in the art has no objective guidance as to how to apply the metric of "quickly" in the claimed context. *Id.* at 28–30. Defendant argues that the lack of guidance in the specification confirms an indefiniteness finding. *Id.* at 29.

In its Reply, Plaintiff contends that Defendant's entire argument (which is based on the term of degree "quickly") is misplaced. *See, e.g.*, Dkt. No. 58, Plaintiff's Reply Claim Construction Brief, at 9–10. Plaintiff argues that the term "quickly" (as noted by Judge Folsom) must be read "in the context discussed as to the term 'timely situation information' . . . regarding the user being able to take advantage of the information, such as while the user is still proximate to a relevant location or has not yet reached the location." *Id.* at 10. Plaintiff contends that this term is not indefinite, causes no "zone of uncertainty" issues, and in the context of claim 11 is not indefinite. *Id.*

### (2) Analysis

The parties dispute whether the term is indefinite. In the *Aaron Brothers* case, Judge Folsom rejected arguments that step (c) of claim 11 is indefinite. *See Aaron Brothers* Order at 24–34. He provided a thorough analysis of the "quickly" term utilized in the phrase and the overall construction of the claim, and provided a construction of step (c). *See id.* In the *BP America* case, the Defendants did not argue that step (c) of claim 11 was indefinite, but the parties disputed whether Judge Folsom's construction should be adopted or whether specific terms within the phrase should be separately construed. *See BP America* Order at 45–46. Judge Gilstrap found that Judge Folsom's prior analysis was thorough and would be helpful to the jury, so Judge Gilstrap adopted Judge Folsom's prior ruling with a slight numbering modification. *Id.* at 46. Regarding the embedded "whereby said user may quickly receive and display timely situation information" term within

step (c), the parties disputed whether it needed a construction separate from Judge Folsom's construction. In particular, they disputed whether additional limitations were needed to objectively evaluate the constituent term "quickly." *Id.* at 47–48.The Court ruled that no additional construction of the "quickly" phrase was necessary. *Id.* at 48–49. Plaintiff's proposed construction is the same construction provided by Judge Folsom for the term. For the reasons detailed below, this Court finds that step (c) of claim 11 is not indefinite and adopts the prior construction.

Step (c) of claim 11 is reproduced below:

> displaying selectably scalably said items on said computer whereby said user may **quickly receive and display** timely situation information mapped in the context of spatial information, including appropriate to a geographical or other area, in which said mappable hypertext items are **quickly** received, mapped, and optionally executably selected by said user to provide additional of said situation information **or** received, stored, and transmitted by a provider of said situation information.

(emphasis added). There are two instances of the word "quickly" in the claim. The first "quickly" modifies "receive and display" regarding "timely situation information." The parties agree that the term "timely situation information" means "up-to-date information about an event, or a condition, occurring or about to occur at a place." Thus, in context, the first "quickly" allows a user to quickly receive and display up to date situation information. The second "quickly" modifies the "mappable hypertext items" phrase and applies to both the "received, mapped, and optionally executably selected . . ." phrase and the "received, stored, and transmitted . . ." phrase. On its face, the "quickly" terms apply to the set of claimed operations as a whole. For example, with respect to "quickly receive and display timely situation information," the claim may be satisfied if the "receive and display" operations in the aggregate may be done quickly.

The specification teaches that the term "quickly" has its plain meaning in the context of providing or receiving relevant information. *See, e.g.*, '956 patent, col. 2, ll. 13–22 ("An obvious problem, too, is the lack of an accessible and efficient telephone directory or database to <u>quickly</u> connect to the appropriate information source."); col. 8, ll. 13–15 ("Digital photographs or video recordings of the scene could be <u>quickly</u> transmitted to those who evaluate emergency-situation information."); col. 22, ll. 15–20 ("Element data type 29d provides information as to whether the item's symbol, icon, or name is capable of being included with other items in a executably se-lectable menu which appears to pop up, that is, to <u>quickly</u> graphically appear adjacent to the icon or text item which was executably selected by the user")(emphasis added). Further, the specifica-tion teaches that the speed at which information is provided is based on the corresponding appli-cation of the invention:

> Area services and public safety personnel could do their jobs faster and more effectively with a <u>ready source of situation information</u> at their fingertips. For example, traffic congestion and emergency-sit-uation information can be provided to approaching motorists and distant emergency decision makers, respectively, by those on the scene equipped with camera and communication capabilities. Digi-tal photographs or video recordings of the scene could be <u>quickly transmitted</u> to those who evaluate emergency-situation information. In the case of vehicular traffic congestion, the vehicle's location, speed, and travel-direction data could be collected and redistributed as <u>real-time, graphical, traffic-situation information</u>. Thus, vehicle operators could avoid traffic situations that lay in their paths. Mo-torists encountering accidents could transmit digital photographs to the emergency-response dispatch center. Accident victims could also record traffic-accident details, drivers involved, drivers' identi-fication, license-plate numbers, etc., as corroborating visual infor-mation.

'956 patent, col. 8, ll. 7–24 (emphasis added); *see also id.* at Abstract ("A wireless system for providing services and time-critical information about places and events to mobile computers and their users proximate to their current locations or potential destinations . . . ."); col. 6, ll. 31–46

(stating that, as visitors approach their hotel, the system provides them a map display with "increasing detail, ultimately positioning them at the hotel's entrance"); col. 28, ll. 59–63 ("The situation information system has been described with reference to exemplary and preferred embodiments which the reader can see provide a high degree of accessible usefulness which will provide users with better, specifically timely and proximate, information."); col. 7, ll. 33–36 ("knowing a person's location, the networked store could increase customer traffic by transmitting special offers directly to the willing customer's device"). Accordingly, as understood by one skilled in the art, the exact rate at which information is received may vary and absolute precision for the "quickly" term is not needed for an understanding of the proper boundaries of step (c).

In the *Aaron Brothers* case, Judge Folsom construed step (c) of claim 1 and rejected the indefiniteness challenge to that claim. *See Aaron Brothers* Order at 24–34. Judge Folsom provided a detailed and thorough analysis of the claim and issues raised by the prior Defendants. *See id.* In particular, Judge Folsom analyzed each of the below issues raised by the prior Defendants:

> (1) How quick is "quickly"?
>
> (2) Does the first "quickly" mean that the user must quickly receive and quickly display timely situation information, or only quickly receive the information?
>
> (3) Does the second "quickly" mean that the items are (a) quickly received alone; (b) quickly received, quickly mapped, and quickly optionally executably selected; or (c) all of the above and quickly "received, stored and transmitted"?
>
> (4) Is "or received, stored, and transmitted" an alternative to "quickly received, mapped, and optionally executably selected" or simply an alternative to "optionally executably selected by said user"?
>
> (5) Does the "provider of such situation information" need to receive, store and transmit the information, or only transmit the information?

(6) Does "in which said mappable hypertext items" mean the items
are received, etc. in the computer or received, etc. while the user is
in the "geographical or other area"?

(7) Additional syntactical ambiguities.

*See id.* Regarding the "quickly" term, Judge Folsom found that "although the term 'quickly' in-

cludes a subjective element, its scope does not 'depend solely on the unrestrained, subjective opin-

ion of a particular individual purportedly practicing the invention. *Id.* at 28 (citations omitted).

"Instead, the use of 'quickly' must be read in the context discussed as to the term 'timely situation

information,' regarding the user being able to take advantage of the information, such as while the

user is still proximate to a relevant location or has not yet reached the location." *Id.* (citing multiple

specification references). In particular, Judge Folsom found that "[t]his context provided by the

written description and the constituent term 'timely situation information' enables a finder of fact

to objectively evaluate the constituent term 'quickly.'" *Id.* at 29. Judge Folsom further found that

a particular step need not be performed "quickly" as long as the set of operations, as a whole, is

done quickly in the aggregate. *Id.* at 30.

In the *BP America* case, Judge Gilstrap confirmed Judge Folsom's construction for this

term and further rejected the prior Defendants' attempts to include additional language for the

"quickly" term. *BP America Order* at 45–49. Judge Gilstrap found that when step (c) and the

disputed "quickly" phrase are read in light of the separately construed and/or agreed terms of "se-

lectably scalably," "mappable hypertext items," "optionally executably selected by said user to

provide additional of said situation information," "displaying," "said computer," and "timely situ-

ation information," that a "finder of fact will be able to objectively evaluat[e] the constituent term

'quickly.'" *Id.* at 48. Judge Gilstrap rejected any additional limitations to the "quickly" term. *Id.*

The Court rejects Defendant's arguments that because the "quickly" term is one of degree it is indefinite. As an initial note, the Court finds that the term "quickly" is construed and understood in the computer-science field. The Court finds that "quickly" is not an entirely subjective term without any objective boundaries. *See, e.g., Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) ("Although absolute or mathematical precision is not required, it is not enough, as some of the language in our prior cases may have suggested, to identify 'some standard for measuring the scope of the phrase' . . . . The claims, when read in light of the specification and the prosecution history, [] provide objective boundaries for those of skill in the art.") (citations omitted); *Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1367 (Fed. Cir. 2010) ("Not all terms of degree are indefinite. However, the specification must "provide[ ] some standard for measuring that degree.") (quoting *Datamize*, 417 F.3d at 1351); *Invitrogen Corp. v. Biocrest Mfg., LP*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.") (citation and internal quotation marks omitted). "Reasonable certainty" does not require absolute or mathematical precision. *See, e.g., BASF*, 875 F.3d at 1365; *Biosig*, 783 F.3d at 1381.

The "quickly" term is not a purely subjective term such as "aesthetically pleasing" or in an "unobtrusive manner." Its scope does not depend solely on the unrestrained, subjective opinion of a particular individual practicing the invention. Its scope does not depend "on the unpredictable vagaries of any one person's opinion." Further, in context, the Court finds that it can be judged by a finder of fact in the context of the application of the invention. The Court finds that — consistent with Judge Gilstrap's opinion — a finder of fact will be able to objectively evaluate the "quickly" phrase when read in light of the separately construed and/or agreed terms of "selectably scalably," "mappable hypertext items," "optionally executably selected by said user to provide additional of

said situation information," "displaying," "said computer," and "timely situation information." Overall, the Court finds that the patent specification and the claim provide objective boundaries and sufficient notice to one of skill in the art to understand the scope of the claimed invention.

Defendant argues that the "quickly" step is indefinite because it is unclear which steps can be performed quickly, or if a particular step is performed quickly and the other steps are not performed quickly, to satisfy the entire claim. For example, Defendant argues that it is not clear whether "quickly" requires each of the actions (*e.g.*, received, mapped, selected) to be performed quickly, or whether the combined set of actions must occur quickly. Dkt. No. 56 at 29. As another example, Defendant also argues that the patent provides no guidance as to whether information that is received and remains up to date but is not mapped or selected until much later satisfies the "quickly" limitation. *Id.* at 29–30. The Court rejects Defendant's arguments that one of skill in the art would not be able to reasonably interpret the "quickly" term based on different "quickly" steps applied to a computer (*e.g.*, received or mapped) or performed by a user (*e.g.*, selected). The Court finds that the "quickly" step applies to the actions by the computer, not the user selecting information. While the "quickly" word modifies the phrase "optionally executably selected by said user to provide additional of said situation information," the Court finds that the "quickly" term is not measuring how "quickly" the user must select the information, but — consistent with the Court's construction on "optionally executably selected . . ." — how "quickly" the item is "displayed" by the computer. *See also* col. 22, ll. 15–20 ("Element data type 29d provides information as to whether the item's symbol, icon, or name is capable of being included with other items in a executably selectable menu which appears to pop up, that is, to <u>quickly</u> graphically appear adjacent to the icon or text item which was executably selected by the user"). What matters is whether the set of operations, as a whole, is done quickly. Defendant's arguments erroneously focus on the

"quickly" terms in isolation to the surrounding claim language and the Court's constructions as to the separate terms.

On balance, the Court finds that the term "quickly" does not render claim 11 indefinite. Defendant has failed to prove by clear and convincing evidence that the term "quickly" or the entire claimed phrase recited in step (c) is indefinite. The Court finds that the "quickly" term is not an entirely subjective term. The "quickly" term — and step (c) in its entirety — is not viewed, understood, or construed in a vacuum. Overall, the Court finds that there is no dispute that one of ordinary skill in the art would understand with "reasonable certainty" the scope of the invention and the bounds of step (c) of the claim, particularly in light of the Court's constructions of various constituent terms. Accordingly, pursuant to the Supreme Court's holding in *Nautilus*, the Court rejects Defendants' arguments that the claim when "read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention."

No additional construction is necessary for the "quickly" term. Because this resolves the dispute between the parties, the Court finds that no other terms within the disputed phrase require further construction. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.") (*citing U.S. Surgical*, 103 F.3d at 1568).

The Court hereby construes step (c) of claim 11, without reference to the separately construed constituent terms, to mean the following:

**(1) displaying selectably scalably said items on said computer,**

**(2) whereby said user may, quickly, receive and display timely situation information mapped in the context of spatial information, including spatial information appropriate to a geographical or other area, and**

**(3) whereby said mappable hypertext items are, quickly, either:**

**(a) received, mapped, and optionally executably selected by said user to provide additional of said situation information; or**

**(b) received by a provider of said situation information, stored by a provider of said situation information, and transmitted by a provider of said situation information**

## V. CONCLUSION

The Court adopts the above constructions set forth in this opinion for the disputed terms of the patent-in-suit. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 20th day of April, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE